In the Interest of K.N.C. and
G.R.C., Children.

No. 05–07–01715–CV.

Court of Appeals of Texas,
Dallas.

Dec. 17, 2008.

Rehearing Overruled Jan. 15, 2009.

Richard L. Turner, Attorney At Law, Mesquite, TX, for Appellant.

Dennis Michael Saumier, Garland, TX, for Appellee.

Before Justices WRIGHT, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice WRIGHT.

George Chapman, Father, appeals from a final decree of divorce. In three issues, Father contends the trial court abused its discretion by: (1) ordering appellant to pay child support when the children receive social security benefits because of his disability; (2) ordering possession terms that are so vague as to be unenforceable by contempt; and (3) ordering a division of property whereby Mother received one-hundred percent of the community estate. We sustain Father's first issue, his second issue, in part, overrule his third issue, and modify the trial court's judgment as set forth below. We affirm the trial court's judgment as modified.

### Background

Mother and Father were married in 1990. Two children were born during the marriage. Mother filed for divorce in 2006. During the marriage, the parties

lived in a house that Father had purchased prior to the marriage. Mother worked full-time. Father worked full-time until he was seriously injured in a car accident in 1996. He was disabled as a result of that accident. At the time of divorce, he was still receiving disability benefits and the two children also receive social security benefits because of their Father's disability. Father admitted to drug use in the past but denied that he was using drugs at the time of trial.

Following a trial, the trial court appointed Mother and Father as joint managing conservators, ordered Father to pay child support, set supervised visitation for Father, and divided the community estate. Father timely filed this appeal.

## Standard of Review

█ The same standard of review applies to all of Father's issues. We review a trial court's judgment on child support, visitation, and division of the community estate for an abuse of discretion. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Garner v. Garner,* 200 S.W.3d 303, 306 (Tex.App.-Dallas 2006, no pet.) (child support order reviewed for abuse of discretion); *Niskar v. Niskar,* 136 S.W.3d 749, 753 (Tex.App.-Dallas 2004, no pet.) (visitation order reviewed for abuse of discretion); *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981) (property division reviewed for abuse of discretion). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *LaFrensen v. LaFrensen,* 106 S.W.3d 876, 877 (Tex. App.-Dallas 2003, no pet.); *In re P.J.H.,* 25 S.W.3d 402, 405 (Tex.App.-Fort Worth 2000, no pet.).

## Child Support

█ In his first issue, Father contends the trial court abused its discretion by ordering him to pay $230.00 a month in child support. Specifically, Father asserts he should not be required to pay child support because each child receives $322.00 a month from the Social Security Administration due to Father's disability. We agree.

Section 154.132 of the family code provides as follows:

> In applying the child support guidelines for an obligor who has a disability and who is required to pay support for a child who receives benefits as a result of the obligor's disability, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's disability.

TEX. FAM.CODE ANN. § 154.132 (Vernon 2002). Pursuant to the guidelines, Father should pay twenty-five percent of his net monthly resources. TEX. FAM.CODE ANN. § 154.125(b) (Vernon Supp.2008). The trial court found that Father's net monthly income was $1,230.00. Twenty-five percent of that amount is $307.50. Each child receives $322.00 a month in social security benefits due to Father's disability.

The monthly payment each child receives from the Social Security Administration exceeds the amount of child support Father would be required to pay under the child support guidelines. The trial court, however, ordered Father to pay an additional $230.00 a month in child support. In its findings of fact, the trial court explained as follows: "The

specific reasons that the amount of support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of section 154.125 of the Texas Family Code are [Father] is intentionally unemployed or underemployed and his actual income is significantly less than he could earn."

■ If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor. TEX. FAM.CODE ANN. § 154.066 (Vernon 2002). In order to find a parent intentionally unemployed or underemployed, the evidence must show that the parent reduced his income for the purpose of decreasing his child support payments. *In re P.J.H.*, 25 S.W.3d at 405–06. The requisite intent may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *In re Davis*, 30 S.W.3d 609, 617 (Tex.App.-Texarkana 2000, no pet.); *In re P.J.H.*, 25 S.W.3d at 406. Once the obligor has offered proof of his current wages, the obligee bears the burden of demonstrating that the obligor is intentionally underemployed. *Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex.App.-Corpus Christi 2002, no pet.); *DuBois v. DuBois*, 956 S.W.2d 607, 610 (Tex.App.-Tyler 1997, no pet.).

There is no evidence that Father became unemployed in order to avoid paying child support payments. The undisputed evidence is that Father became unemployed as a result of a disabling injury resulting from a serious car wreck. Mother did not dispute the severity of the injuries Father suffered in the car accident.

Prior to the car accident, Father worked full-time in the masonry business. There is no evidence as to what he earned at that job. Father testified that he applied for a job two years ago with the City of Mesquite. When asked whether he could hold down a job, Father responded, "I wouldn't know until I tried it. I believe I might be able to, yes."

■ Moreover, once Father introduced evidence of his current income, it was Mother's obligation to prove that he is intentionally unemployed. *See Zorilla*, 83 S.W.3d at 253. Mother did not allege that Father was intentionally unemployed nor did she produce any evidence as to what Father earned prior to the accident leading to his disability. The record is also void of any evidence as to Father's earning potential. The evidence merely shows that Father applied for a job with the City of Mesquite. There was no testimony as to what the job paid or that he was offered a job that he refused to accept. The trial court's finding that Father has not suffered any disabilities since 2005 is not evidence that he no longer suffers from the disability caused by the car accident.

The evidence is insufficient to support the trial court's finding that Father is intentionally unemployed. Because intentional unemployment was the ground upon which the trial court ordered additional child support, we conclude the trial court abused its discretion in ordering Father to pay $230.00 a month in additional child support. Accordingly, we sustain Father's first issue and modify the divorce decree to delete the obligation of Father to pay $230.00 a month in child support in addition to the $322.00 a month received by each child from the Social Security Administration due to Father's disability.

### Possession Order

■ In his second issue, Father contends the trial court erred in rendering the possession order. Specifically, Father

contends the order is so vague as to be unenforceable by contempt.

The trial court appointed Mother and Father as joint managing conservators of the children. As to visitation, the trial court ordered as follows:

> The Court finds that credible evidence has been presented that it is in the best interest of the children that [Father's] periods of possession be continuously supervised. IT IS THEREFORE ORDERED that visitation shall be under the supervision of a competent adult, or entity, agreed upon between the parties on the following days and times:
>
> i. Weekends—On weekends, beginning at 9:00 a.m. on each Saturday following the first, third, and fifth Friday of each month and ending at 6:00 p.m. the same day.

In its amended findings of fact, the trial court stated four reasons for deviating from the standard possession order: (1) Father's long-term history of substance abuse; (2) Father has not sought out counseling or rehabilitation for his substance abuse problem; (3) Father failed to comply with the trial court's order to complete the Families First: CAP Center Seminar for Divorcing Parents; and (4) the children would be in physical or severe emotional danger if Father had unsupervised possession and access.

Father contends the trial court effectively gave Mother veto power over his visitation if she does not agree upon a supervisor. We agree. After oral argument before this Court, we ordered the parties to provide us with an agreed upon name of a person to supervise Father's visitations. The parties filed an agreed letter stating that either *John Tanner or Phil Duran,* Associate Pastor of the Open Door Baptist Church in Mesquite, Texas, could supervise Father's visitation. Accordingly, we modify the following sentence on page eight of the divorce decree as follows: "IT IS THEREFORE ORDERED that visitation shall be under the supervision of ~~a competent adult, or entity, agreed upon between the parties~~ either John Tanner or Phil Duran, Associate Pastor of the Open Door Baptist Church in Mesquite, Texas, on the following days and times: ..."

Father also complains about the provision requiring him to attend drug counseling for six months without stating what happens after that time period. In his appellate brief, Father questions whether supervised visitation ends when he completes the requisite drug counseling. The trial court did not tie completion of the drug counseling to the conclusion of supervised visitation. The decree is clear on this point. The supervised visitation continues until Father or Mother seeks and obtains a modification of this provision.

Father also contends the decree fails to state when the visitations are to begin or how long they will continue. We disagree. The decree states "this Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Possession Order." The decree also provides that the periods of possession apply to each child while that child is under the age of eighteen and not otherwise emancipated.

We sustain Father's second issue to the extent he contends the trial court erred in setting the terms for who is to supervise his visitations. We modify that portion of the decree. In all other respects, we overrule Father's second issue.

### Property Division

■ In his third issue, Father contests the property division. Specifically, he contends the trial court abused its discretion

in awarding one-hundred percent of the community estate to Mother.

 A trial court is charged with dividing the estate of the parties in a just and right manner, considering the rights of both parties. Tex. Fam.Code Ann. § 7.001 (Vernon 2006). The trial court may consider many factors, including the parties' earning capacities, education, business opportunities, physical condition, financial condition, age, size of separate estates, nature of the property, and the benefits that the spouse who did not cause the breakup of the marriage would have enjoyed had the marriage continued. *Murff*, 615 S.W.2d at 699; *Zorilla*, 83 S.W.3d at 252. The court may consider a spouse's dissipation of the community estate, as well as the spouse's misuse of community property. *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex.App.-Houston [1st Dist.] 1993, pet. denied).

The trial court awarded Father the house as his separate property and a Ford pickup truck. The trial court awarded Mother all of her 401k earnings amounting to approximately $86,000.00 and the Grand Prix that she purchased with a loan from her 401k. The trial court found that there were two other vehicles purchased during the marriage and that Father disposed of them during the pendency of the divorce.

With respect to the property division, the trial court made the following findings:

31. During the marriage [Father] wasted community assets.

* * *

34. The 1971 Chevrolet Malibu was purchased during the marriage and was part of the community estate.

35. The 1964 Harley Davidson Panhead motorcycle was purchased during the marriage and was part of the community estate.

36. [Father] disposed of the 1971 Chevrolet Malibu and the 1964 Harley Davidson Panhead motorcycle during the pendency of the divorce.

* * *

41. During the marriage, [Father] pawned, or otherwise disposed of the community estate with no benefit received by [Mother].

42. During the marriage, [Mother] and [Father] used community funds for payment toward [Father's] separate property debts.

Wife testified at trial that she and Father took out a home equity loan to purchase a motorcycle and Chevrolet Malibu. While the divorce was pending, Mother claimed that Father disposed of these vehicles. Father disputed this testimony. He testified that he was just storing those two vehicles for a neighbor. Documentary evidence introduced at trial, however, showed that Mother and Father maintained insurance on the two vehicles. Mother testified that Father had possession of the titles to the vehicles. She stated that he asked her to register them as classic vehicles. She refused to do so because it was too expensive. The trial court, as trier of fact, was free to believe or disbelieve any witness's testimony. The trial court found that Mother was a credible witness and Father was not credible.

 Alternatively, Father argues that the Malibu and motorcycle were his separate property because the creditor agreed to look solely to his separate property house as collateral for the home equity loan. However, Mother signed the loan as a cosigning spouse. The loan, signed by both parties, was taken out during the marriage. Property purchased with proceeds from a community loan is community property. *See Jones v. Jones* 890 S.W.2d 471, 476 (Tex.App.-Corpus Christi 1994,

pet. denied). Father also points to the fact that Mother had her liability for this debt discharged in bankruptcy. That fact, however, has no bearing on the characterization of the property. Testimony at trial supports the trial court's finding that the loan proceeds were used to purchase the two vehicles. Accordingly, the trial court properly characterized those vehicles as community property. The evidence also supports the trial court's finding that Father disposed of the two vehicles while the divorce was pending.

Mother also testified at trial that Father frequently pawned community property items like televisions, dvd players, lawnmowers, video game consoles, and bicycles. Father denied that he pawned these items.

The evidence shows that Father disposed of community assets, including two vehicles. Father was awarded his house as his separate property. During the marriage, Mother contributed to the mortgage payments on Father's separate property. Father's contention that Mother received all of the community estate is not accurate. Father disposed of community property for which Mother received no benefit. Under these circumstances, we conclude the property division awarded by the trial court was not an abuse of discretion.[1] We overrule Father's third issue.

We modify the trial court's judgment to delete the obligation of Father to pay $230.00 a month in child support and change the visitation provision as set forth in this opinion. As modified, we affirm the trial court's judgment.

---

[1] Father also complains that the trial court did not follow Mother's proposal that she pay Father $250.00 a month for five years. Again, the trial judge, as the trier of fact, heard the testimony and evidence presented at trial. He was not bound by Mother's proposed division.