02-10-301-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00301-CV

 

 


 
 
 Clayton Newell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Christina N.
 Newell
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 325th
District Court OF Tarrant
COUNTY

----------

 

OPINION

----------

I.  Introduction

This
is an appeal from a divorce decree that orders Appellant Clayton Newell to pass
random drug and alcohol testing in order to be entitled to unrestricted
possession of his daughter.  In two issues, Clayton argues that the trial court
abused its discretion by ordering the random alcohol testing and that the
restriction exceeds that required to protect the best interest of his daughter.
 We will modify the trial court’s judgment to delete the requirement that
Clayton submit to random alcohol testing and affirm the trial court’s judgment,
including the random drug tests, as modified.  

II.  Factual
and Procedural Background

          Clayton
married Appellee Christina N. Newell in May 2003.  During the marriage, Clayton
and Christina had one child, N.A.N. (Natalie).[1]

          Clayton
used drugs as a teenager, and he began abusing drugs in the fall of 2007 when
his younger brother died.  Clayton went to outpatient rehabilitation in May
2009, and he and Christina separated in June 2009.  The next month, Clayton
filed a petition for divorce.  He asked that he and Christina be appointed
joint managing conservators of Natalie.  A few days later, Christina filed a
counterpetition in which she requested sole managing conservatorship of Natalie
and asked the trial court to enter all orders that the court found to be in
Natalie’s best interests.  The trial court entered temporary orders, which
included making Clayton’s possession of Natalie contingent upon him passing
drug tests that Christina was required to pay for.

          In
July 2010, the parties agreed to have permanent joint managing conservatorship
of Natalie, with Christina serving as her primary caregiver and Clayton having scheduled
possession rights.  Through a written agreement,[2] the parties decided to
submit to the trial court “the one remaining issue regarding the divorce
decree; specifically whether drug testing ends at 5 years or if [Clayton] is
still unemployed if it will continue once a year until he is gainfully
employed.”

          At
trial, Clayton presented evidence of drug tests that he passed in July 2009, August
2009, September 2009, December 2009, and June 2010; a July 2009 urine test was
negative for all drugs tested, but the hair follicle test of the same day was
positive for opiates and cocaine.  Clayton testified that his sobriety date was
June 2009 and that he had stopped using drugs more than a year before the July
2010 trial began.  He admitted that he has stopped attending Narcotics
Anonymous meetings because he does not own a vehicle.

Regarding
his alcohol use, Clayton testified that he drinks alcohol (including during
communion at his church), that he has abused alcohol in the past, but that he
has never been addicted to alcohol.  He said that he was not, at the time of
trial, drinking in excess to the point of intoxication.  Clayton testified that
it was fair for the trial court to subject him to random drug tests and to
enjoin him and Christina from drinking alcohol during or within twelve hours
before either of them possessed Natalie.  However, he said that he did not
think it was fair to be subjected to alcohol testing concurrently with the drug
tests because “it is legal to consume alcohol in the privacy in [his] home, in
a restaurant[,] or in any other social context.  It’s too intrusive.”  Clayton
said that he would never drink around Natalie.

          Christina
testified that Clayton had “been high” around Natalie in the past and expressed
concern that he would return to using drugs.  She explained that he had used
prescription painkillers “to excess” and had smoked marijuana on a few
occasions while he was on parole in 2007.  In response to a question from the
trial court about why she wanted Clayton to also be tested for alcohol
consumption, Christina said, “Because I know from past experience living with
him that he does have an issue with alcohol abuse.  My daughter numerous times
comes home from her weekends with him and state[s] that he drinks.”

The
final divorce decree orders Clayton to submit to random alcohol tests
(concurrently with the drug tests) up to three times per year for five years;
the alcohol tests will determine whether he has consumed alcohol within the eighty
hours preceding the tests and must occur within twelve hours of his possession
of Natalie.  Christina must pay for the tests as long as Clayton continues to test
negative.  The tests must be completed on the same day that a testing facility
notifies Clayton that he is required to take them.  If Clayton fails to appear
for a test or tests positive for using drugs or alcohol, Clayton’s periods of
possession of Natalie are modified and restricted.[3]

          Clayton
filed a motion for new trial, contending that the evidence is legally and
factually insufficient to support the trial court’s decision to require him to
submit to alcohol testing; he does not contest the drug testing.  At a hearing
on Clayton’s motion, the trial court offered to modify the random alcohol
testing provision if Clayton agreed to wear a SCRAM device while he has
possession of Natalie, provided that he pay all costs of the device.  Clayton declined,
the court denied Clayton’s motion, and he brought this appeal.

III.  Random Alcohol Testing

          In
two issues, Clayton contends that the trial court abused its discretion by ordering
him to be tested for alcohol consumption because the order is not based on
factually sufficient evidence and because the restriction exceeds that required
to protect Natalie’s best interests.[4]

A.  Standard
of review

We
review the trial court’s decisions on custody, control, possession, and
visitation matters for an abuse of discretion.  In re M.M.M., 307 S.W.3d
846, 849 (Tex. App.—Fort Worth 2010, no pet.); see Gillespie v. Gillespie,
644 S.W.2d 449, 451 (Tex. 1982); In re W.M., 172 S.W.3d 718, 724 (Tex. App.—Fort
Worth 2005, no pet.).  To determine whether a trial court abused its
discretion, we must decide whether the court acted without reference to any
guiding rules or principles; in other words, we must decide whether the act was
arbitrary or unreasonable.  M.M.M., 307 S.W.3d at 849; see Low v.
Henry, 221 S.W.3d 609, 614 (Tex. 2007); W.M., 172 S.W.3d at 725.  

In
our review of a child custody ruling under the abuse of discretion standard,
legal and factual sufficiency are not independent grounds of error but are
relevant factors in deciding whether the trial court abused its discretion.
 In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet.
denied) (op. on reh’g); see W.M., 172 S.W.3d at 725.  In determining whether
there has been an abuse of discretion because the evidence is legally or
factually insufficient to support the trial court’s decision, we consider
whether the court had sufficient information upon which to exercise its
discretion and whether it erred in its application of that discretion.  M.M.M.,
307 S.W.3d at 849; W.M., 172 S.W.3d at 725; T.D.C., 91 S.W.3d at
872.  “The traditional sufficiency review comes into play with regard to the
first question.  With regard to the second question, we determine, based on the
elicited evidence, whether the trial court made a reasonable decision.”  W.M.,
172 S.W.3d at 725 (footnote omitted).

B.  Law
on Restrictions on a Parent’s Right of Possession

“The
best interest of the child shall always be the primary consideration of the
court in determining the issues of conservatorship and possession of and access
to the child.”  Tex. Fam. Code Ann. § 153.002 (West 2008); Lenz v. Lenz,
79 S.W.3d 10, 14 (Tex. 2002); M.M.M., 307 S.W.3d at 850.  There is a
rebuttable presumption that the standard possession order provides reasonable
minimum possession for a parent named as a joint managing conservator and is in
the child’s best interest.  Tex. Fam. Code Ann. § 153.252 (West 2008).  

If special
circumstances make the standard possession order unworkable or inappropriate,
however, “[t]he court shall render an order that grants periods of possession
of the child as similar as possible to those provided by the standard
possession order.”  Id. § 153.253 (West 2008); see In re J.E.P.,
49 S.W.3d 380, 385 & n.15 (Tex. App.—Fort Worth 2000, no pet.).  In
deviating from the standard possession order, the trial court may consider the
age, developmental status, circumstances, needs, and best interest of the
child; the circumstances of the managing conservators; and any other relevant
factor.  Tex. Fam. Code Ann. § 153.256 (West 2008); J.E.P., 49
S.W.3d at 387.  An order that imposes restrictions or limitations on a parent’s
right to possession of or access to a child may not exceed terms that are
required to protect the best interests of the child.  Tex. Fam. Code Ann. §
153.193 (West 2008); see M.M.M., 307 S.W.3d at 854; see also In re
J.S.P., 278 S.W.3d 414, 419 (Tex. App.—San Antonio 2008, no pet.) (“[A]
trial court’s ultimate goal is to minimize restrictions placed on a parent’s
right of possession of or access to their child.”).

C.  Random Alcohol
Testing Order Exceeded 

Terms Required to
Protect Natalie’s Best Interest

 

The
facts regarding Clayton’s past alcohol abuse and present alcohol use are sparse
and limited, while the alcohol testing requirement in the trial court’s order
is quite dramatic—effectively requiring Clayton to abstain from any alcohol
consumption for eighty hours (or possibly ninety-two hours[5]) preceding any period of possession
of Natalie, or otherwise risk modified, supervised visitation of his daughter.  We
conclude that, based on the limited evidence in the record concerning Clayton’s
alcohol use, the trial court’s order unreasonably exceeded the terms required
to protect Natalie’s best interest and constituted an abuse of discretion.  See
Tex. Fam. Code Ann. § 153.193; M.M.M., 307 S.W.3d at 849.

Although
the record demonstrates that Clayton had a drug addiction, no evidence exists
that Clayton has ever had an alcohol addiction, that his drinking ever
endangered Natalie in any way, or that all drug addicts are also alcohol
addicts.  No medical records or prior alcohol-related incidents or convictions relating
to any alcohol use by Clayton were offered into evidence at trial.  Christina’s
only testimony regarding Clayton’s alcohol use and her reason for requesting
alcohol testing was that she knew from living with him in the past “that he
does have an issue with alcohol abuse” and that Natalie has told her in the
past, after spending the weekend with Clayton, “that he drinks.”  No evidence exists
that Clayton has ever been drunk around his daughter, that he was drinking to
the point of intoxication at the time of trial, that his current or past
alcohol use is or ever was detrimental to Natalie or Christina, that he ever
drove after drinking, that his personality changed when he drank, or that
consuming alcohol within ninety-two hours prior to having possession of Natalie
would in any way negatively impact her best interests.   Cf., e.g., In
re A.L.E., 279 S.W.3d 424, 429–30 (Tex. App.—Houston [14th Dist.] 2009, no
pet.) (upholding modification of custody order when “record [was] replete with
evidence that [mother’s] substance-abuse problems have significantly, and
negatively, affected A.L.E. since she came to reside with her mother”); Ohendalski
v. Ohendalski, 203 S.W.3d 910, 913, 915–16 (Tex. App.—Beaumont 2006, no
pet.) (affirming order that prohibited father from driving with children in car
when father had history of chronic alcohol abuse, drank during supervised
visitations, and “terrorized” children by driving under the influence); Hopkins
v. Hopkins, 853 S.W.2d 134, 138 (Tex. App.—Corpus Christi 1993, no writ)
(upholding restrictions on father’s access to children based on evidence that
he had been convicted of delivery of controlled substances, used drugs in front
of the children, and physically abused mother and oldest child on multiple
occasions); see also In re L.M.M., No. 03-04-00452-CV, 2005 WL 2094758,
at *5, 8 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.) (finding
allegations that father drank and drove not corroborated by testimony when
father admitted to drinking in the evenings with children present but not to
point of intoxication and said he never drives intoxicated, and when other
witnesses confirmed that he does not drink and drive).  Furthermore, the evidence
in the record shows that Clayton had been drug-free the entire year preceding
trial[6]
and that he agreed not to drink during or within twelve hours prior to any
possession of Natalie.  

Clearly,
the trial court has discretion to order alcohol testing on appropriate facts.  See
Tex. Fam. Code Ann. § 153.253, .256; see also A.L.E., 279 S.W.3d at
433 (upholding order requiring drug and alcohol testing).  But, in this case, considering
the limited facts regarding Clayton’s alcohol use in the past and at the time
of trial; considering that in the year prior to trial, he tested negative for
drug use multiple times; and considering the drastic restriction placed on
Clayton’s alcohol use and the severe consequences of a positive alcohol
test—which could be attributable to alcohol Clayton drank while Natalie was not
in his possession—we hold that the trial court’s order requiring three random, eighty-hour
alcohol tests exceeded the restrictions required to protect Natalie’s best
interest.[7]
 See Tex. Fam. Code Ann. § 153.193; see also Pierre, 50
S.W.3d at 559 (holding that trial court abused its discretion by requiring father
to submit to drug and alcohol testing at his expense “in the absence of any
evidence of drug abuse”).  Consequently, we hold that the trial court abused
its discretion by entering the order that it entered, and we sustain Clayton’s
second issue.[8] 
See M.M.M., 307 S.W.3d at 849.

IV.  Conclusion

Having
sustained Clayton’s second issue, we modify the trial court’s judgment to
delete the requirement that Clayton submit to random alcohol testing and affirm
the trial court’s judgment as modified.  See Tex. R. App. P. 43.2(b).

 

 

SUE WALKER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; WALKER, and MCCOY, JJ.

 

LIVINGSTON,
C.J. filed a dissenting opinion.

 

MCCOY,
J. filed a concurring opinion.

 

DELIVERED:  August 18, 2011

 


 
 
 
 
 
 


 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00301-CV

 

 


 
 
 Clayton Newell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Christina N. Newell
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 325th
District Court OF Tarrant COUNTY

----------

 

CONCURRING
OPINION

----------

 

          I
concur that the trial court abused its discretion by entering the judgment it
entered concerning testing for alcohol use but for a different reason than
enunciated by my fellow justice.  I believe that the trial court has the right,
and in fact, the obligation to order alcohol testing depending on the circumstances. 
I further believe that there is sufficient evidence in this case to warrant
testing pursuant to the court’s judgment except as to the timing of the
testing.  To test within twelve hours of possession of Natalie seems to imply
that it is to be within twelve hours after the beginning of the possession of
Natalie, but as worded, could also theoretically be from twelve hours before
the beginning of the possession of Natalie until twelve hours after the end of
possession of Natalie.  It is only testing at the later time that accomplishes
the obvious purpose of the requirement, that is, to ensure that Clayton not
drink alcohol while in possession of his daughter.  Any testing while in
possession, or prior to possession of Natalie, would allow Clayton to drink
alcohol after the test but while in possession of his daughter.  

          For
the foregoing reason, I concur in the outcome reached by my fellow justice.

 

 

BOB MCCOY
JUSTICE

 

 

DELIVERED:  August 18, 2011

 




 









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00301-CV

 

 


 
 
 Clayton Newell
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Christina N.
 Newell
 
 
  
 
 
 APPELLEE 
 
 


 

 

----------

 

FROM THE 325th
District Court OF Tarrant
COUNTY

----------

 

DISSENTING
OPINION

----------

          While
the majority’s opinion correctly explains the abuse of discretion standard that
we employ when reviewing a trial court’s decision in a conservatorship appeal,
the majority errs in applying that standard because the trial court’s decision
to require Clayton to take three random alcohol tests per year within twelve
hours of possessing Natalie is neither arbitrary nor unreasonable.  See In
re W.M., 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.)
(explaining that the “trial court has wide latitude in determining the best
interests of a minor child”).  We must be cognizant that the trial court
is in a better position to decide issues within custody cases because “it faced
the parties and their witnesses, observed their demeanor, and had the
opportunity to evaluate the claims made by each parent.”  In re M.M.M., 307
S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.) (quoting In re J.R.D.,
169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied)).  An abuse of
discretion does not occur as long as some evidence of substantive and probative
character exists to support the decision.  W.M., 172 S.W.3d at 725.

          The
best interests of the child must be the primary consideration of the trial court
when determining issues of conservatorship and possession of and access to a
child.  Tex. Fam. Code Ann. § 153.002 (Vernon 2008); M.M.M., 307 S.W.3d at
850.[9] 
The trial court’s order requiring Clayton to submit to alcohol testing does not
deny his possession of Natalie; it imposes restrictions on his right to possess
her.  The trial court asked Christina about the basis for her desire to require
alcohol testing.  She said, “Because I know from past experience living with
him that he does have an issue with alcohol abuse.  My daughter numerous
times comes home from her weekends with him and state[s] that he
drinks.”  [Emphasis added.]  The trial court could have determined that
Christina’s present-tense explanation of Clayton’s alcohol consumption around
Natalie weakened his credibility on the rest of his testimony concerning the nature
of his alcohol consumption because he had previously testified that he would
never drink around her.[10] 
Although Clayton denied ever having an addiction to alcohol, he admitted that
he has abused alcohol in the past.  He further admitted that he still drinks
alcohol.  He conceded that he thought that it was fair for the court to enjoin
both parents from drinking alcohol while in possession of Natalie or within twelve
hours of that possession.

          Clayton
also has a history of drug addiction, including the use of heroin, cocaine, and
marijuana.  He admitted that he has stopped attending Narcotics Anonymous
meetings because he does not own a vehicle.  The trial court could have
reasonably found that Clayton’s problem with drug abuse, including prior
relapses and the use of drugs even after attending rehabilitation, justified
also testing him for alcohol consumption, particularly because he admitted that
he had abused alcohol in the past.  Cf. In re Pierre, 50 S.W.3d 554, 559
(Tex. App.—El Paso 2001, orig. proceeding) (“[I]n the absence of any evidence
of drug abuse . . . the trial court abused its discretion by
requiring Relator to submit to drug and alcohol testing and ordering him to pay
for the same.”).  I would hold that the trial court had sufficient information
upon which to exercise its discretion and did not err in its application of
that discretion by weighing evidence that produced conflicting inferences about
Clayton’s extent of alcohol use (including use around Natalie) and the need for
alcohol testing.  See M.M.M., 307 S.W.3d at 849; W.M., 172
S.W.3d at 725.

          Clayton
also argues that because the alcohol testing ordered by the trial court requires
screening for the preceding eighty-hour period even though he will not always
have possession of Natalie during the entire eighty hours, he could test
positive for alcohol yet not be in violation of the agreed injunction. 
Therefore, Clayton contends, the trial court cannot impose such a restriction. 
I find this argument unpersuasive.  The trial court asked the parties whether
there was a test available that would cover a lesser period of time.  Christina’s
counsel stated that she did not know of any such test (and Clayton did not
offer to take such a test if one exists).  Thus, the trial court decided to leave
the eighty-hour test in place.  The court could have reasonably determined that
Natalie’s best interests required Clayton to refrain from consuming alcohol
during or immediately before his possession of her, and Clayton conceded that
it was fair that he not drink within twelve hours of possessing her.  He did
not, however, propose a means other than the eighty-hour test of ensuring that
result while still allowing him to drink at times before his immediate
possession of her.  During a hearing on Clayton’s motion for new trial, the
trial court offered such an alternative—to wear a device (at his expense) that
would detect his alcohol consumption only while he possessed Natalie—but he did
not choose to do so.

          For
these reasons, I would hold that the trial court did not abuse its discretion
by including the provisions regarding alcohol testing in the judgment, and I
would therefore affirm the judgment.

          Finally,
even if I agreed with the majority’s conclusion that the trial court abused its
discretion, I would still dissent to the majority’s disposition of the appeal. 
The majority essentially holds that the trial court abused its discretion
because the facts of this case are inappropriate and insufficient to show that
Clayton’s random alcohol tests are in Natalie’s best interests.  See
Majority Op. at 9-10.  In such a situation, unless the majority expressly holds
that there was no evidence to support the trial court’s decision, it
should remand, based on factual insufficiency, rather than deleting the alcohol
testing requirement.  See Glover v. Tex. Gen. Indem. Co., 619
S.W.2d 400, 401–02 (Tex. 1981) (holding that if a court of appeals sustains an
issue or point because the evidence is factually insufficient, it must reverse
the judgment of the trial court and remand for new trial); In re T.D.C.,
91 S.W.3d 865, 877 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh’g)
(remanding a custody case based on a determination that the trial court abused
its discretion because its decision was based on factually insufficient
evidence); Enriquez v. Krueck, 887 S.W.2d 497, 503 (Tex. App.—San
Antonio 1994, no writ) (same); see also In re J.O.A., 283 S.W.3d 336,
347 (Tex. 2009) (“[A] remand is . . . the appropriate judgment when evidence is
found to have been factually insufficient[.]”); Wilson v. Wilson, 132
S.W.3d 533, 534, 539 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)
(remanding a case regarding the division of a community estate because of an
abuse of discretion based on factual insufficiency).[11]

          For
all of these reasons, I dissent to the majority’s opinion and judgment.

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

DELIVERED:  August 18, 2011

 









[1]To protect Natalie’s identity, we will use
an alias.  See Tex. Fam. Code Ann. § 109.002(d) (West 2008).  The
divorce decree states that Christina gave birth to Natalie on November 22,
2005.





[2]See Tex. R. Civ. P. 11. 





          [3]The
divorce decree states that if Clayton provides negative drug and alcohol tests
and lives within 100 miles of Natalie, he may possess Natalie, among other
agreed times, during some weekends, for two hours each Thursday during the
school term, during spring break in even-numbered years, for thirty days during
the summer, and during some holidays.  If he tests positive, he may exercise
only ten hours of supervised possession every other Saturday.  Once he tests
positive, he must provide three negative tests within a ninety-day period to
again be entitled to unrestricted possession rights.





[4]Christina
argues on appeal that because the parties entered into a valid, signed Rule 11
agreement, the only issue before the trial court was whether Clayton’s random
drug testing should continue beyond a five-year period.  The alcohol testing
issue, however, was tried by consent at trial.  See Tex. R. Civ. P. 67; Roark
v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991).  





[5]We
interpret the requirement that the random alcohol testing occur “within twelve
(12) hours of Clayton Newell’s possession of the child” to mean that Christina
could order the testing to occur up to twelve hours before or after Clayton’s
possession of Natalie.





[6]The
record suggests that the trial court included the alcohol testing requirement,
at least in part, based on Clayton’s prior drug abuse.  At the end of trial,
the trial court explained, 

I think given the drugs that you chose
to use, heroin and cocaine, which are pretty hard drugs and fairly addictive,
and -- and it takes a while before you -- and even the experts agree someone
has kicked an addiction.  I’m going to go ahead and sign the decree with the
provisions in here as they are.





[7]The
dissent argues that we must remand this case for a new trial, rather than
delete the alcohol testing requirement, unless we hold that no evidence
supports the trial court’s decision.  Dissenting Op. at 5.  However, as we
mentioned above, in family law cases, legal and factual insufficiency are not
independent reversible grounds of error but are relevant factors in assessing
whether the trial court abused its discretion.  T.D.C., 91 S.W.3d at
872; see W.M., 172 S.W.3d at 725.  In other words, the applicable abuse
of discretion standard of review overlaps with the traditional sufficiency
standard of review.  Boyd v. Boyd, 131 S.W.3d 605, 611 (Tex. App.—Fort
Worth 2004, no pet.).  Here, having considered the sufficiency of the evidence
in assessing whether the trial court abused its discretion as alleged in
Clayton’s second issue, and having held that the trial court did in fact abuse
its discretion by ordering the alcohol testing that it ordered because it exceeded
the restrictions required to protect Natalie’s best interest, the appropriate
remedy is to delete the alcohol testing requirement from the decree and affirm
as modified.  See, e.g., In re K.N.C., 276 S.W.3d 624, 628 (Tex.
App.—Dallas 2008, no pet.) (modifying decree to name two specific individuals, agreed
to by the parties, as alternative visitation supervisors, rather than allowing
mother to effectively veto father’s visitation if she did not agree upon
supervisor); In re C.A.M.M., 243 S.W.3d 211, 223 (Tex. App.—Houston
[14th Dist.] 2007, pet. denied) (reforming trial court’s order to remove
requirement of supervised visitation); In re Pierre, 50 S.W.3d 554, 559
(Tex. App.—El Paso 2001, no pet.) (reforming trial court’s order to omit
alcohol and drug testing requirement).

Our
holding in no way limits Christina’s ability to seek modification of the
possession order based on future events.  See Tex. Fam. Code Ann. §
156.101 (West Supp. 2010) (providing for modification of possession order).

 





[8]Because
Clayton’s second issue is dispositive, we need not address his first issue
claiming that the trial court abused its discretion because the order is not
based on factually sufficient evidence.  See Tex. R. App. P. 47.1.





[9]Thus,
I disagree with the majority’s statement that the trial court’s ultimate
goal is to minimize restrictions placed on a parent’s right of possession.  See Majority
Op. at 7.  To the extent that this goal conflicts with the child’s best
interests, the child’s best interests should predominate.  





[10]Specifically,
the trial court could have reasonably inferred from Natalie’s “numerous”
statements to Christina that Clayton’s alcohol consumption was not as
controlled as he had testified. 





[11]The
cases cited in footnote seven of the majority’s opinion are inapposite.  See
Majority Op. at 10–11 n.7.  In In re C.A.M.M., the appellate court
removed a requirement of supervised visitation because the requirement had not
been included in trial court’s original custody order and there was no
argument made (and apparently no evidence presented) regarding visitation in
the father’s motion for new trial.  243 S.W.3d 211, 222–23 (Tex. App.—Houston
[14th Dist.] 2007, pet. denied).  And in In re Pierre, the appellate
court reformed an order to delete a drug testing requirement because there was
an “absence of any evidence of drug abuse.”  50 S.W.3d at 559 (emphasis
added).