

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00029-CV

IN THE INTEREST OF H.T.S. AND T.A.S., CHILDREN

On Appeal from the County Court at Law No. 2
Smith County, Texas
Trial Court No. 17-1215-F

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

The trial court entered an order modifying the parent-child relationship after finding Father in contempt of an agreed decree of divorce from Mother.[1] On appeal, Father argues that the trial court erred by (1) entering a possession and access order, (2) ordering Father to follow recommendations of a counselor, and (3) awarding $40,000.00 in attorney fees to Mother.[2]

We find that the trial court's possession and access order is valid and that the trial court did not abuse its discretion by requiring Father to follow a counselor's recommendations. Even so, we sustain Father's third point of error complaining of the lack of sufficient evidence to support the attorney fee award. As a result, we reverse the attorney fee award and remand for a new trial on attorney fees only. In all other respects, we affirm the trial court's order modifying the parent-child relationship.

I.      **Factual and Procedural Background**

Mother and Father were divorced in September 2019. The agreed final divorce decree appointed both parents as joint managing conservators of their children, Harold and Thad,[3] with Mother having the exclusive right to designate the children's residence within Smith County. Among other things, the agreed decree required that Father attend Alcoholics Anonymous (AA),

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Father also raised a fourth point of error arguing that the trial court failed to enter findings of fact and conclusions of law as required by Sections 153.072 and 153.258(a) of the Texas Family Code, specifying its reasons for deviating from the standard possession order and limiting Father's rights as a conservator. As a result of our order abating this appeal, the trial court entered the required findings and conclusions. Consequently, we overrule Father's fourth point of error.

[3]We use pseudonyms to protect the identities of the children. *See* TEX. R. APP. P. 9.8.

2

that he "maintain his Soberlink subscription . . . for so long as he ha[d] possession of the children," and that his possession of and access to the children be supervised.

On January 6, 2021, the trial court found that Father was in contempt of the agreed final divorce decree. As a result, the trial court modified the parent-child relationship. The trial court's order retained both Mother and Father as joint managing conservators, with Mother having the exclusive right to determine the children's primary residence within Smith County. The times of Father's possession and access were in line with a standard possession order but specified that Father's visitation was to "**be supervised at all times with 'Conditions of Possession and Access' as set out in [that] Order**." Under the "Conditions of Possession and Access" portion, the trial court included the following language:

> IT IS ORDERED that the [Father] shall have supervised possession of the children according to a Standard Possession Order as set out in the Texas Family Code. Any time that [Father] has possession of the children, he shall have an adult assistant/babysitter present, and that adult assistant/babysitter shall at all times remain within line of sight and hearing of [Father] and the children subject of this suit. The adult assistant/babysitter shall be mutually agreed between the parties, and the adult assistant/babysitter shall be required to pass a criminal background check (which shall be provided to [Mother]) prior to scheduling visitation. A new background check shall not be required on any adult assistant/babysitter who has already had a background check run, but said adult assistant/babysitter must be agreed upon by [Mother].

> Adult Assistant/Babysitter

> IT IS ORDERED that the parties must mutually agree to said adult assistant/babysitter. In the event the parties can not [sic] agree to an adult assistant/babysitter, [Father]'s visits shall take place with a person and/or facility designated by the Court.

In its findings of fact and conclusions of law, the trial court explained that its ruling was the result of having found Father in contempt of the agreed final divorce decree.

3

## II. The Trial Court's Possession and Access Order is Valid

The trial court's order required that Father's possession of and access to Harold and Thad be supervised.[4]  In its order, the trial court stated that Mother and Father could either agree to a suitable supervisor or have the trial court appoint one.  Claiming that the trial court's order required Mother's agreement on an appropriate supervisor,[5] Father argues that the order was unenforceable because it effectively denied his right of access to Harold and Thad.  Father also argues that the trial court's failure to name a supervisor in its order rendered the order unenforceable by contempt and, thereby, void.  We disagree.

### A. Father Was Not Effectively Denied Possession of and Access to His Children

First, we note that Father's three main cited cases are easily distinguishable.  *See In re J.Y.*, 528 S.W.3d 679, 689 (Tex. App.—Texarkana 2017, no pet.); *In re K.N.C.*, 276 S.W.3d 624, 628 (Tex. App.—Dallas 2008, no pet.); *Roosth v. Roosth*, 889 S.W.2d 445, 450 (Tex. App.—Houston [14th Dist.] 1994, writ denied).  In *In re J.Y.*, we reversed the order specifying that Mother's visitation would "be pursuant to the children's counselor's recommendation" because, contrary to the requirements of Section 153.006(c) of the Texas Family Code, the trial court's order was "not sufficiently specific as to the times and conditions for [Mother's] possession of or access to" her children.  *In re J.Y.*, 528 S.W.3d at 689, 691.  For the same reason, the Houston Fourteenth Court of Appeals reversed a possession order granting Father possession of his

---

[4]Father does not argue that the trial court abused its discretion by requiring supervised visitation or that supervised visitation was not in the children's best interests.

[5]Because the trial court's order provided that it would choose a supervisor if the parties could not agree on one, we find meritless Father's argument that "**[t]he Trial Court erred in ordering that [Father's] possession and access be condition[ed] on the parties' mutual agreement of the supervisor.**"

children "only at times mutually agreed to in advance by the managing Conservator." *Roosth*, 889 S.W.2d at 450; *but see In re J.J.R.S.*, 627 S.W.3d 211, 217 (Tex. 2021) (finding that a trial court could condition possession and access "[o]nly if the managing conservator agreed to visitation" based on unique circumstances that could have led the trial court to conclude that the severe restriction was in the children's best interest (alteration in original)).  Here, the trial court set forth Father's times of possession and access to Harold and Thad in detail, and further specified that it was in accord with the standard possession order described by Section 153.312 of the Texas Family Code.  *See* TEX. FAM. CODE ANN. § 153.312 (Supp.).

In *In re K.N.C.*, the Dallas Court of Appeals reversed the trial court's possession order because it required that Father's visitation be supervised by "a competent adult, or entity, agreed upon between the parties." *In re K.N.C.*, 276 S.W.3d at 628.  The Dallas court found that such language "effectively gave Mother veto power over [Father's] visitation." *Id.*; *see In re Walters*, 39 S.W.3d 280, 285 (Tex. App.—Texarkana 2001, no pet.) ("[Mother] contends the trial court's order effectively denies her possession of and access to [her son] by ordering that she have possession 'at all times mutually agreed between the parties.'").  But here, the trial court's order did not require Mother's agreement on the supervisor because the trial court would appoint one in the event of no agreement.

Because the trial court's order set forth specific dates and times of Father's possession of and access to his children and was not solely conditioned on the mutual agreement of the parties, we reject Father's argument that he was effectively denied possession and access.

5

**B.      The Trial Court's Order Was Not Void for Vagueness**

We also find that the trial court's order was not void simply because it failed to name a supervisor. It is true that "for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *In re J.J.R.S.*, 627 S.W.3d at 223 (quoting *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding)). Even so, "while an order must be 'clear, specific, and unambiguous' to be enforceable by contempt, it does not follow that every order less than that is invalid." *Id.* (quoting *Slavin*, 412 S.W.2d at 44). "[W]hile the [Texas] Family Code provides that conservators may be subject to contempt for disobeying a court order, the Code does not require—nor [has the Texas Supreme Court] ever held—that trial courts must issue orders that are always enforceable by contempt." *Id.* at 223–24 (citation omitted).

Here, we find that the trial court's possession and access order is enforceable. *See id.* at 224 ("[W]hether a conservator may enforce an order by contempt depends on the contents of the order and the facts and circumstances of the particular case."). The order is clear, specific, and unambiguous as to the times of Father's possession and access and requires that his visitation be supervised. We find that nothing more is required because the failure to agree to a supervisor will not result in denial of Father's possession of or access to his children since the trial court will simply appoint one. Instead, as in *In re J.J.R.S.*, the order is valid since Father has a remedy (asking the trial court to appoint a supervisor) and because the Texas Family Code specifically

6

allows the trial court to clarify the order by supplying the name of a supervisor.  *See id.*; *see also*
TEX. FAM. CODE ANN. § 157.421.

We overrule Father's first point of error challenging the possession and access order.

### III.    The Trial Court Did Not Abuse Its Discretion by Ordering Father to Follow the Recommendations of a Psychologist

The terms of the agreed divorce decree, including that Father attend AA and maintain a Soberlink subscription, show that Father's use of alcohol was an issue during the divorce. During the modification proceedings, the trial court ordered Dr. Donald Winsted to conduct a psychological evaluation of Father.  After hearing Winsted's testimony, the trial court required Father to "receive a referral for follow-up counseling services and substance abuse treatment as recommended by . . . Winsted" and ordered him to "follow any and all recommendations and referrals made by . . . Winsted."  In his second point of error, Father argues that the trial court erred by requiring him to follow Winsted's recommendations in its modification order.

#### A.    Standard of Review

"A court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession of and access to a child."  TEX. FAM. CODE ANN. § 156.001.  The court may modify such an order if doing so "would be in the best interest of the child[ren]" and on a showing of a material and substantial change in circumstances.  TEX. FAM. CODE ANN. § 156.101.  "The trial court is given wide latitude in determining the best interests of . . . minor child[ren]."  *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).  As a result, "[a] trial court's modification of conservatorship is reviewed for abuse of discretion."  *In re K.L.R.*,

7

162 S.W.3d 291, 307 (Tex. App.—Tyler 2005, no pet.). "It is an abuse of discretion for a trial court to rule without supporting evidence."[6] *Id.*

"[T]he trial court faces the parties and the witnesses, observes their demeanor and personality, and feels the forces, powers, and the influences that cannot be discerned by merely reading the record." *In re K.L.D.*, No. 12-10-00386-CV, 2012 WL 2127464, at *2 (Tex. App.—Tyler June 13, 2012, no pet.) (mem. op.). "The trial judge is, therefore, in a better position to analyze the facts, weigh the virtues of the parties, and determine what will be in the best interest of a child." *Id.* Consequently, "a trial court's findings of fact are binding on an appellate court unless they are so contrary to the great preponderance of the evidence as to show a clear abuse of discretion." *In re K.L.R.*, 162 S.W.3d at 307. "In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court." *Id.*

## B.    The Evidence at Trial

Winsted noted that Father's medical history included "HLD [(hyperlipidemia)] and December 2016 TBI [(traumatic brain injury)] skull fracture and bilateral frontal SDH [(subdural hematoma)] due to an alcohol-related fall." Father admitted that he had sustained an "alcohol-induced traumatic brain injury." He testified that, since the entry of the agreed divorce decree, he had received therapy for alcoholism and had attended AA as ordered by the decree but stopped after "Covid started." Father also admitted that he tested positive for alcohol in March 2021.

---

[6]"Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are relevant facts in assessing whether the trial court abused its discretion." *In re Treadwell*, No. 12-14-00301-CV, 2015 WL 3451425, at *1 (Tex. App.—Tyler May 29, 2015, no pet.) (mem. op.).

Winsted testified that Father's answers during his psychological evaluation were defensive and that, as a result, Winsted's reading of Father was limited. Winsted also noted that Father was "faking good" and "attempted to give socially desirable responses . . . to hide negative personal characteristics." Winsted wrote that "[o]ther issues of concern regarding his ability to effectively care for his children include[d] a history of substance abuse" and noted that Father was not interested in participating in counseling. According to Winsted, Father acknowledged previously using alcohol every day and said he had "been to a couple of treatment centers" but claimed that his last drink was in 2017. When asked about Father's Soberlink results and admissions to drinking after 2017, Winsted said that that "would suggest there may be a higher probability of there being some substance use issues." Winsted recommended individual counseling, substance abuse treatment, and aftercare for Father and believed he should subject himself to random drug screens.

### C. Analysis

The trial court found that ordering Father to comply with Winsted's recommendations was in the children's best interests. Critically, Father does not contest that finding. Even so, we will address Father's arguments that the trial court erred because Winsted was a biased third party and because "it is unclear how Appellant's compliance or noncompliance affects his possession [of] and access to the children."

Father contends that Winsted was biased because he was retained by Mother and because his knowledge of the case was supplied by Mother's counsel. Yet, Winsted conducted a separate clinical interview of Father and administered several instruments to support his conclusions,

including a mental status form, intelligence test, parenting inventory, caregiving experience assessment, Millon clinical multiaxial inventory, and the Substance Abuse Subtle Screening Inventory. Winsted testified that he was neutral, did not "have a dog in the fight," and wanted to help Father. After hearing Winsted's testimony, the trial court found him to be "credible and compelling." Because it was within his purview to assess Winsted's credibility and the record contains Winsted's testimony that he was neutral, we cannot say that the trial court abused its discretion in finding that Winsted was neutral and only wished to help Father.

Next, Father argues that it is unclear how compliance or noncompliance impacts Father because his possession or access was not conditioned on following Winsted's recommendations. The record shows otherwise.

"The terms of an order that . . . imposes restrictions or limitations on a parent's right to possession of or access to [his children] may not exceed those that are required to protect the best interest of the child[ren]." TEX. FAM. CODE ANN. § 153.193. Here, the trial court found that it was in the children's best interest for Father's possession and access to be supervised. The trial court specifically informed the parties that it wished for Father to one day have unsupervised vitiation with his children. The trial court wrote,

> I believe it would be in the children's best interest, as well as [Father's], to follow the recommendations made in [Winsted's] report. Should [Father] genuinely follow therapeutic recommendations AND allow for a period of time to pass so that these recommendations can take root I could see the court . . . allowing for unsupervised access at that point.

10

Because the record shows that compliance with Winsted's recommendations was required for Father to have unsupervised visitation, we reject Father's complaint and overrule his second point of error.

## IV. We Reverse the Attorney Fee Award

In his third point of error, Father challenges the amount of attorney fees awarded. "An attorney's fees award in a suit affecting the parent-child relationship is discretionary with the trial court." *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) (citing TEX. FAM. CODE ANN. § 106.002); *see In re J.K.R.*, 658 S.W.3d 354, 364 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.) ("A trial court's award of attorney's fees in a [suit affecting the parent-child relationship] is reviewed for an abuse of discretion."). As a result, "[w]e review a trial court's decision to either grant or deny attorney's fees under an abuse of discretion standard." *Slack v. Shreve*, No. 12-22-00024-CV, 2023 WL 2417971, at *8 (Tex. App.—Tyler Mar. 8, 2023, no pet.) (mem. op.) (citing *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004)). "In contrast, we review a trial court's determination regarding the amount of attorney's fees for . . . sufficiency of the evidence." *Id.* (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)).

A review of Father's brief shows that he is not complaining about the award of attorney fees to Mother but instead argues that the evidence is legally insufficient to support the amount of attorney fees awarded. We agree.

"When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). The Texas Supreme

11

Court has explained that it intends "the lodestar analysis to apply to any situation in which an objective calculation of reasonable hours worked times a reasonable rate can be employed." *Id.* at 498.

"[T]he fact[-]finder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable hourly rate, and the fee claimant bears the burden of providing sufficient evidence on both counts." *Id.* "[T]here is a presumption that the base lodestar calculation, when supported by sufficient evidence, reflects the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Id.* at 499. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498. "This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Id.*

"Expert testimony is required to support an award of attorney's fees." *Adkison v. Adkison*, No. 12-06-00077-CV, 2007 WL 259550, at *7 (Tex. App.—Tyler Jan. 31, 2007, no pet.) (mem. op.). Mother was represented by Alicia Barkley at trial. Father's attorney stipulated to Barkley's "expertise as to reasonable and necessary fees charged throughout East Texas," but not to any amount of attorney fees. After the trial court noted that it was familiar with Barkley's qualifications,[7] she testified to the following:

---

[7]While the trial court acknowledged Barkley's qualifications, the record did not show them.

> This Court has already taken judicial notice of all of the prior proceedings, the prior orders, the prior hearings that have been had. As a result of that, and as a result of all of the delays, as a result of all of the events and lack of events that have occurred in this case, I am asking that my client be awarded her attorney's fees in their entirety.
>
> At the time that we started this trial this morning, my client had accrued $47,625 in attorney's fees, and that's over the two-plus years that she has -- that I have worked on her behalf. We are asking that she be awarded the amount of $47,625. That does not include the amount for the trial itself.
>
> I do bill at a rate of $350 for trial hours. I bill at a rate of 250 for office ho[u]rs. So I am asking for the trial fee as well. I just don't know how much that is yet. But I do believe that these fees were reasonable and necessary.
>
> My legal assistant is Nancy Parker. . . . She has been supervised by myself. I am the only attorney that has worked on this case in representation of my client [Mother].
>
> I will also say that Ms. Parker has engaged in necessary activities such as filing of motions, contacting client, contacting attorneys, scheduling, drafting of letters and motions for my review. All of this was necessary in this case to protect these children. All of this has been necessary to further this litigation to a completion trial.
>
> We are before the Court asking that [Mother] be awarded all of her attorney's fees, when I left the office this morning, of $47,625.

No billing records were produced. The trial court awarded Mother $40,000.00.

In *Rohrmoos*, the Texas Supreme Court wrote that generalities about an attorney's experience, the total amount of fees, and the reasonableness of the fee "are not sufficient to support a fee-shifting award under the lodestar method." *Rohrmoos Venture*, 578 S.W.3d at 496. We find that Barkley's testimony was too general to constitute legally sufficient evidence of attorney fees.

13

Even though Barkley stated, "All of this has been necessary," she did not testify about how many hours she worked in the case or whether the hours worked were reasonable. She also did not provide any information segregating the work performed by her versus the work performed by Parker or identify at what rate she was charging for Parker's services.

Because the evidence fell short of what is required by *Rohrmoos*, we reverse the attorney fee award and remand the case to the trial court for a redetermination of attorney fees.

## V.  Conclusion

We reverse the attorney fee award and remand for a new trial on attorney fees only. In all other respects, we affirm the trial court's order modifying the parent-child relationship.

Scott E. Stevens
Chief Justice

Date Submitted:     September 27, 2023
Date Decided:       November 8, 2023

14