

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00084-CV

_____

IN THE INTEREST OF J.Y., G.Y., AND B.Y., CHILDREN

On Appeal from the 76th District Court
Titus County, Texas
Trial Court No. 37,897

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

The Texas Department of Family and Protective Services (the Department) filed a petition to terminate the parental rights of Geri and John to their three children—Jane, Gayle, and Bailey.[1] After a bench trial, the trial court issued an order naming the Department as permanent managing conservator of the children and naming Geri and John as possessory conservators of the children. Geri appeals the order of the trial court. Although we find that the trial court's order appointing Geri as the children's possessory conservator was within its discretion and that Geri has not preserved her due process and equal protection claims, we reverse the trial court's judgment because the trial court erred in having insufficiently specified the terms of Geri's possession of or access to the children.

## I.    Background

When the Department investigated a report of Geri's neglectful supervision and physical neglect of her three elementary school-aged children in August 2014, it discovered that although Geri was receiving $600.00 a month in food stamps, she was running out of food for the children by mid-month. Geri refused to disclose information regarding specific allegations relating to previous domestic violence, current substance abuse issues, and her mental health status.[2] Consequently, the Department referred the case to Family Based Safety Services (FBSS), and the

---

[1]In this opinion, we refer to the appellant as Geri, to the children's father as John, and to the children by pseudonyms. This is done in an effort to conceal the identities of the children. *See* TEX. R. APP. P. 9.8.

[2]When the case was initiated, John was incarcerated for "a felony assault" against Geri.

trial court ordered Geri to participate in those services.[3] From the beginning of the case, Geri's mental health was a concern. This concern was prompted by Geri's evident labile emotions. Geri was not forthcoming and refused to cooperate with the FBSS psychological evaluation,[4] and she was not compliant with the services FBSS sought to provide.

Geri did not activate the air conditioner during the summer due to financial concerns, and she dressed the children in multiple layers of long clothing. Although Geri was employed, the electricity at her home was cut off in October 2014, and in October and November, there were still problems with inadequate, or no, food in the home.[5] At a hearing in late October, Geri's behavior was erratic, and she was disruptive in the courtroom.[6] As a result of these concerns, and pursuant to an agreement for parent-child safety placement, the children were placed in the home of an aunt and uncle. Although Geri agreed to the safety placement, she soon became dissatisfied with it and began to complain that the aunt and uncle were smoking cigarettes and drinking alcohol around

---

[3]The order required Geri to participate in parenting classes, individual and domestic violence counseling, and a psychological evaluation.

[4]The scant information obtained during the evaluation revealed that although Geri refused to comment on possible substance abuse, available documentation indicated that she demonstrated a pattern of methamphetamine use prior to the birth of her children. During the course of the evaluation, Geri demonstrated "incongruent affect to the situation (e.g.[,] laughing when it is not apparently warranted)." She also appeared to be intermittently "distracted by external stimuli (e.g., 'There's a bird outside!')." Geri refused to speak about her family background and early life experiences and appeared motivated to portray herself as being "exceptionally free of common shortcomings to which most individuals will admit." The report indicated, "Due to [Geri's] apparent defensive approach to the evaluation, little meaningful information was obtained." Consequently, there was no determination of whether Geri suffered from a psychological disorder. "According to available documentation, [Geri] has exhibited behavior characterized as odd or out of the ordinary, such as making facial expressions at and reaching for unseen stimuli, and explaining that God instructed her to dress her children in long skirts and layers of long sleeved shirts." During a second psychological evaluation in November 2014, Geri revealed that she had been sexually abused by her father when she was five years old and that she "did drugs in the past."

[5]Although Geri was employed for much of the time, she was unable to earn adequate income to care for three children.

[6]At a hearing in the summer of 2016, Geri stood in the back of the courtroom and brushed her teeth.

3

the children and that the children were in danger. The Department assessed these concerns and determined that the aunt and uncle were an appropriate placement for the children. On November 1st, Geri was arrested for criminal trespass when she attempted to remove the children from the aunt and uncle's care.[7]

When Geri arrived for a scheduled visit with the children later that month, Gayle cried and did not want to see her mother. Jane sat on the floor and played with toys, and Bailey, who was pre-school aged at the time, cried and wanted a Department employee to hold her. Geri confronted Jane and told her that she was to be sure that her aunt and uncle were not drinking and smoking, because as the oldest child, Jane was responsible for Bailey and Gayle. Geri was escorted from the visitation room and asked not to talk about the "placement." When Geri re-entered the room, Gayle was crying and shaking and wanted to leave with her aunt. When Geri continued to discuss her opinion of the aunt and uncle with the children, the visit was terminated.

Geri's next visit with the children on November 18 was equally negative. Gayle stated that she did not want to see her mother and cried at the prospect of doing so. Gayle ultimately left the room and did not return for the remainder of the visit. Jane again sat on the floor with her back to Geri, and Bailey did not want to go to Geri. Instead, she clung to the Department caseworker.

---

[7]The Department, beset with concerns at Geri's lack of progress, filed a petition for temporary conservatorship on November 2, 2014. On December 2, 2014, following a full adversary hearing, the trial court appointed the Department temporary managing conservator of the children. At the adversary hearing, the court ordered Geri to undergo a psychiatric evaluation and that she have no further contact with the children until the evaluation was completed. The results of the examination revealed that Geri was depressed and anxious. In July 2015, Geri underwent another psychological evaluation. Results of the Child Abuse Potential Inventory—a screening tool for the detection of physical child abuse—were invalid due to the over endorsement of items which present a highly positive image or "fake good." (We assume from the context that the person evaluating the report believed that Geri had not been candid in responding but, rather, had been making an ill-founded attempt to influence the screening results in her favor.)

When the visit was completed, Geri handed the caseworker a grocery sack containing four onions to give to the children.

In January 2015, the children began counseling sessions with Joanne Christian, a licensed professional counselor employed by the Department. At that time, the children showed signs of post-traumatic stress disorder and were diagnosed with that condition. They had significant trust and abandonment issues and had been emotionally and physically abused. Jane and Gayle were frightened of Geri and had no attachment to her at all. Bailey did not know that Geri was her mother.

The following month, the children were placed with Catherine and David Hall, at Geri's request. Geri had become acquainted with the Halls at church and trusted them with the children.[8] Catherine testified that she witnessed Geri imposing discipline on the children by hitting them with a spoon and that Geri beat the children excessively at times. During the approximate eighteen-month time period during which the children resided with the Halls, the children did not want to visit Geri and, in fact, did not see her for over three months. Jane told Catherine that she was frightened of Geri, and Gayle would "tremble at the fact that she would have to go see [Geri]."

Following a period of no contact with Geri, the trial court ordered telephonic visits between Geri and the children. After the initial telephone visit in April 2015, Gayle stated that she neither wanted to see Geri nor speak with her.[9] After the telephonic visit, Christian's recommendation

---

[8]Jane was noted to be a "parentified" child, i.e., she was the major caretaker for the other children in the home.

[9]Gayle explained that Geri would chase Gayle and Jane around the house, screaming at them, to the point that the children hid from her. Gayle indicated that Geri spanked the girls with a cooking spoon and that "[i]t really hurt." At the hearing, Geri explained that when she spanked the children, she was not "playing games" and that she wanted to

that the children have no contact with Geri was echoed by the children's attorney ad litem and by the Court Appointed Special Advocate (CASA). At that point, the trial court ceased all visitation based on the children's extreme reaction to the telephonic visit with Geri. Christian testified that following the telephonic visit, the children were "completely retraumatized" and that "we lost significant ground in helping them regain any type of emotional stability and security."

Visitation ultimately resumed in October 2015, in Christian's office. Jane did not interact with Geri during this visit at all. Gayle became so anxious and upset she had to be removed from the room because she was hyperventilating, an apparent indication that Gayle had been suffering from some type of serious abuse. In interacting with Bailey, Geri referred to Jane and Gayle as Geri's "friends and her sisters." When Bailey asked Geri who Geri was, Geri told her, "[T]he Court says I'm your mother." After approximately two months, Christian recommended that the trial court discontinue Geri's visitation with the children because her behavior toward the children became inappropriate, and Jane and Gayle had begun to regress as a result of their contact with Geri. The trial court did not, however, accept this recommendation.

Although the children were thriving under the Halls' care, they were abruptly removed from the home in July 2016, after Geri accused David Hall of sexually molesting Bailey. Christian testified that she was present when Geri made the accusation, following a visit with Bailey in March 2016. The accusation was made after Bailey, who was sick, had problems with diarrhea. Geri then asked Bailey if her daddy put his hands down her pants. Bailey began to cry and stated

---

make sure it hurt. On one occasion, Geri spanked Gayle at church because a four-year-old boy tried to kiss her. Geri felt it was necessary to spank Gayle because she was "not going to have [her] kids . . . kissing on boys."

6

that she wanted her daddy. Geri testified that Bailey answered, "Yes" to her question regarding Hall. Consequently, she filed a criminal complaint against Hall. Christian testified that Hall did not do anything inappropriate, and, following an investigation of this allegation, no charges were filed against him. The children, however, were forced to move to different foster homes. Jane once again become parentified, Bailey was confused at having to leave the only parents she has ever known, and Gayle wanted to return to her "Mommy and Daddy," referring to the Halls.[10] Geri's contact with the children was again discontinued after this incident.

In Christian's professional opinion, Geri has emotionally and physically abused the children. Christian testified that if the children were returned to Geri, they would be exposed to serious emotional and physical damage. Christian indicated that she has seen no evidence that would demonstrate that Geri is able to emotionally or physically care for the children and was especially concerned that Geri might further hurt Gayle physically. She opined that placement with the Department on a permanent basis is in the best interests of the children.[11]

Karen Chism, the Department's conservatorship supervisor for Titus, Camp, and Upshur Counties, expressed concerns regarding Geri's mental health, her inability to meet the children's basic needs, and her failure to protect the children.[12] Although Geri completed all required classes in her service plan, she was not able to provide a stable home for the children. In addition to her

---

[10]The Halls made the decision that they could no longer keep the children following Geri's apparently baseless allegation.

[11]The children, who are of Native American descent, have been placed with a Native American foster family.

[12]Although Geri was concerned with the children's placement with their aunt and uncle due to their alleged smoking and drinking, Geri also smokes and drinks. There was, according to the Department, "a lot of alcohol in her home." Geri admitted that she had a problem with alcohol in the past, but stated that she quit drinking.

apparent inability to properly support the children and to provide them with adequate food,[13] Geri's poor judgment regarding the children's safety is reflected in a June 2016 Facebook post in which she indicated that her father had come to see her from Utah, but she had no way to pick him up in Pittsburg. Geri then posted her Mount Pleasant address and stated that she would leave the back door to her home open while she was at work.[14]

On another occasion in June, Geri's Facebook post indicated that she was walking to Pittsburg and asked that someone pick her up and give her a ride.[15] Chism was concerned that these posts reflected negatively on Geri's mental state and placed her in possible danger. Geri also spent time with her father, whom she admitted molested her as a child. Chism expressed concern that if the children were to live with Geri, her father could be left unsupervised with the children.[16] Chism was also concerned that Geri seemed to be unaware of who might be in her home at any

---

[13]Even after the children were removed from the home, Geri was evidently unable to regularly support herself; she was observed standing outside a Walmart store holding a sign seeking food from passersby. During the pendency of the case, Geri paid no child support for the children.

[14]Geri's Facebook page is not private and can be viewed by anyone. This post told anybody who cared to look that Geri's house was open.

[15]The post read,

> Someone please come take me to Pittsburg, Texas. I'm walking to get my dad, whom I can't reach right now through telephone or internet. When I leave this WiFi connection, I'll be on foot at mercy's door. I'm sorry for being messy. I love Blake and my three kids. Jesus first and all other Christians second and thirdly all the people on earth. I'm saying this 'cause I'm a woman walking to find my dad who got dropped off in Pittsburg, Texas, plus I need time to think, and I do plan on returning home to Pittsburg.

[16]The children were living in a foster home at the time of these events.

given time and that she leaves the back door unlocked so people can come and go.[17] CASA's most recent visit to Geri's home reflected that it was in disarray, was unsanitary, and smelled of animal urine.

Chism is likewise of the opinion that the children would experience serious emotional and physical damage in Geri's care and that placement with the Department on a permanent basis is in their best interest. Amanda Penny, a volunteer for CASA who has followed the children throughout the case, is likewise of the opinion that it would not be in the children's best interests to be returned to Geri. Based on the children's reactions to Geri—as previously described—Penny believes that the children will experience serious emotional or physical damage if they are returned to Geri. Likewise, the attorney ad litem recommended to the trial court that the children remain in the conservatorship of the Department.

## II. The Trial Court's Appointment of Conservators for the Children Was Within its Discretion

Geri contends that the evidence is factually and legally insufficient to support the conservatorship order. We disagree.

A trial court's order regarding conservatorship is reviewed under an abuse of discretion standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We, therefore, will not reverse

---

[17]Geri was required to advise the Department of all people living in the home, but failed to do so. In May 2016, Geri's female roommate was discovered to have a man in her bedroom. On another occasion, a Department caseworker discovered people sleeping in the girls' bedrooms in the middle of the day.

a trial court's appointment of a non-parent as sole managing conservator unless we determine that the appointment was arbitrary and unreasonable. *J.A.J.*, 243 S.W.3d at 616; *Earvin v. Dep't of Family & Protective Servs.*, 229 S.W.3d 345, 350 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment." *Earvin*, 229 S.W.3d at 350.

Legal and factual sufficiency are not independent grounds of error in conservatorship cases but are merely relevant factors in deciding whether the trial court abused its discretion. *In re W.M.*, 172 S.W.3d 718, 725 (Tex. App.—Fort Worth 2005, no pet.). In applying the abuse of discretion standard, we initially determine whether the trial court had sufficient evidence upon which to exercise its discretion. If so, we then determine whether the trial court erred in its exercise of that discretion. *In re M.L.*, No. 02-15-00258-CV, 2016 WL 3655190, at *3 (Tex. App.—Fort Worth, July 7, 2016, no pet.) (mem. op.).

The primary consideration in determining conservatorship is always the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014). We are mindful of the rebuttable presumption that it is in the best interest of the child to have the natural parent appointed as a managing conservator. *See In re M.T.C.*, 299 S.W.3d 474, 481 (Tex. App.—Texarkana 2009, no pet.) (citing *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990)); *see also* TEX. FAM. CODE ANN. § 153.131(West 2014).[18] This presumption may be rebutted by showing that appointment of a parent as a managing conservator would not be in the child's best interest because it "would

---

[18]This Section of the code also provides that "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." TEX. FAM. CODE ANN. § 153.131(a).

10

significantly impair the child's physical health or emotional development."[19]  TEX. FAM. CODE

ANN. § 153.131(a).  Section 263.404 of the Texas Family Code utilizes the same standard in

determining whether the Department should be appointed as managing conservator without

terminating parental rights, as happened here.  *See* TEX. FAM. CODE ANN. § 263.404(a) (West

Supp. 2016) (order appointing Department as managing conservator authorized when

"appointment of a parent as managing conservator would not be in the best interest of the child

because the appointment would significantly impair the child's physical health or emotional

development").

Impairment of the child's physical health or emotional development must be proved by a

preponderance of the evidence showing "specific actions or omissions of the parent that

demonstrate an award of custody to the parent would result in physical or emotional harm to the

child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990); *see In re T.R.B.*, 350 S.W.3d

227, 233–34 (Tex. App.—San Antonio 2011, no pet.).  "Generally, acts or omissions that constitute

significant impairment include, but are not limit[ed] to, physical abuse, severe neglect,

abandonment, drug or alcohol abuse, or immoral behavior by a parent." *In re J.J.G.*, No. 01-16-

00104-CV, 2016 WL 4163851, at *13 (Tex. App.—Houston [1st Dist.] Aug. 4, 2016, no pet.)

(mem. op.) (citing *In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.)).

Additional considerations may include parental irresponsibility, a history of mental disorders,

frequent moves, bad judgment, child abandonment, and an unstable, disorganized, chaotic lifestyle

---

[19]Under Section 153.131, a nonparent may not be appointed a managing conservator without overcoming the presumption as to both parents.  TEX. FAM. CODE ANN. § 153.131.  Here, the parental presumption has been overcome regarding John, who is currently incarcerated.

that has and will continue to put the child at risk. *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.).

The trial court heard evidence relating to (1) the children's emotional and psychological abuse, (2) Geri's inability to provide adequate nutrition and a stable home, and (3) Geri's volatile emotions and erratic behavior.

Christian diagnosed the children as suffering from post-traumatic stress disorder who also exhibited trust and abandonment issues. There was evidence that under Geri's care, the children were emotionally and physically abused. Gayle described Geri's behavior in chasing the girls around the house with a cooking spoon and striking them with it. The children were so frightened that they hid from their mother. Geri admitted that she hit the children with a spoon and that she intended for this striking to hurt them. Catherine testified that Geri beat the children excessively at times. The children, especially Gayle, did not want to see or hear from Geri after they were removed from her care. Jane ignored Geri during visits and admitted that she was frightened of her mother. Gayle hyperventilated on one occasion when she visited Geri and had to be removed from the room. On another occasion, Gayle hid under a table. Early in the time the Department became involved, Bailey cried when Geri visited and clung to the Department caseworker, but with the passage of time, Bailey did not know who Geri was. The trial court stopped Geri's visitation with the children on at least two occasions, once because contact with the children "retraumatized" them, and once because Geri's behavior with the children had become inappropriate. Geri caused the children to be removed from two different foster homes during the course of the proceedings.

12

The trial court also heard evidence that Geri could not properly care for the children, that there was no food in the house after mid-month, and that the house was in disarray, was unsanitary and smelled. The electrical service to the house was terminated on at least one occasion. Even after the children were removed, Geri struggled financially.

Geri's mental health was a concern throughout the case, although the source of any supposed mental problem could not be determined due to Geri's failure to fully cooperate in psychological examinations. Geri was noted to have disrupted the courtroom on one occasion and apparently believed it appropriate to brush her teeth in the courtroom on another occasion. Her social media posts, open to the public, announced that the back door of her home was open and that she needed a ride while hitchhiking to Pittsburg to see her estranged father.

Based on this record, despite the parental presumption in Geri's favor, we cannot determine that the trial court abused its discretion in deciding that it was not in the children's best interests to be returned to Geri's care, *see J.A.J.*, 243 S.W.3d at 616, or in deciding that Geri's appointment as managing conservator of the children would impair their physical health or emotional development, *see* TEX. FAM. CODE ANN. § 263.404 (West Supp. 2016). The trial court's decision is not contrary to the preponderance of the evidence. We overrule this point of error.

## III. Due Process and Equal Protection Claims

Geri contends that because the standard of clear and convincing evidence was not utilized in the trial court's conservatorship decision, her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated. *See* U.S. CONST. amend.

13

XIV. Geri fails to cite any legal support for this contention. Instead, she merely contends that the testimony adduced at the hearing does not satisfy "the appropriate burden of proof."

In conjunction with the foregoing complaint, Geri summarily claims that her Equal Protection rights under the Due Process Clause were likewise violated. This issue is limited to a single sentence in her brief, in which she claims that "[b]y appointing [John] as possessory conservator on the record of noncompliance and nonparticipation in the proceeding, it violates [Geri's] Equal Protection guarantees of the United States and Texas Constitutions."

The Texas Rules of Appellate Procedure require an appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "Bare assertions of error, without argument or authority, waive error." *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.); *see Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing); *In re A.S.*, 241 S.W.3d 661, 663 (Tex. App.—Texarkana 2007, no pet.). Because Geri's Due Process and Equal Protection complaints are inadequately briefed, she has waived these complaints on appeal. We overrule this single, multifarious point of error.

## IV. The Trial Court Erred in Failing to Sufficiently Specify the Terms of Geri's Possession of or Access to the Children

The trial court appointed the Department as the children's permanent managing conservator and named Geri as their possessory conservator. The trial court entered the following order regarding Geri's possession of, and access to, her children:

14

IT IS ORDERED that the conservator[] shall have possession of the children at times mutually agreed to in advance by the parties and, in the absence of mutual agreement, as specified in **Attachment A** to this order, which is incorporated herein as if set out verbatim in this paragraph. The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

Attachment A to the order reads:

19.   IT IS ORDERED that Respondent Mother, [Geri], named as possessory conservator of the children [Jane], [Gayle], and [Bailey], shall have possession and access as follows:

Visitation between [Geri] and [Jane], [Gayle], and [Bailey] will be pursuant to the children's counselor's recommendation.

Geri complains that the trial court abused its discretion in entering this order because it "falls far short of the specificity necessary to comport with constitutional strictures of due process related to possession and access" to the children. She also broadly complains that her visitation with the children should not have been restricted. The Department contends that these issues have not been preserved for our review.

At the conclusion of the hearing, the Department asked that it be appointed the children's sole managing conservator. In conjunction with this request, the Department asked that "no visitation occur at this time until a counselor that is either Mrs. Christian or some other counselor who is working with the children makes a recommendation that that's in the best interest." After closing arguments, the trial court stated:

I'm going to award the department the sole managing conservatorship. The . . . mother . . . [is a] possessory conservator[], but [her] visitation, . . . future contact and visitation is going to be contingent upon a counselor directing that.

. . . .

15

> But at this time, based on the evidence, I'm appointing the department as the sole managing conservator with the stipulations that I announced on the record.

Geri did not object to this ruling on the basis that the terms of visitation were vague or otherwise uncertain. Thereafter, Geri filed a motion for new trial in which she complained that the evidence is legally and factually insufficient to support the trial court's judgment. Geri also complained that although the trial court determined that her appointment as possessory conservator was in the children's best interests, the court's finding that her access to the children should be restricted was not supported by the evidence. We find that this complaint is sufficiently broad to encompass Geri's complaints on appeal.[20]

Conservatorship determinations are subject to review for an abuse of discretion and may be reversed only if the trial court's decision was arbitrary and unreasonable. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (applying abuse of discretion standard to possession order). The primary consideration in determinations related to conservatorship, possession, and access is the best interest of the child. *See* TEX. FAM. CODE ANN. § 153.002 (West 2014). However, "[c]omplete denial of parental access amounts to a near-termination of a parent's rights to his child and should be reserved for situations rising nearly to the level that would call for a termination of parental rights." *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *3 (Tex. App.—Fort Worth Dec. 10, 2010, no pet.) (mem. op.). Consequently, a "complete denial of access should be rare." *In re Walters*, 39 S.W.3d 280, 287 (Tex. App.—Texarkana 2001, no pet.); *see Hale v. Hale*, No. 04-05-00314-CV, 2006 WL 166518, at *2 (Tex. App.—San Antonio Jan. 25,

---

[20]This Court has since received a record of the hearing on the motion for new trial, which clearly reflects that Geri complained of the visitation order's lack of specificity.

2006, pet. denied) (mem. op.) (parent appointed as possessory conservator should be denied periodic visiting privileges with child only in extreme circumstances). Conversely, when a trial court appoints a parent as a possessory conservator, it is free to conclude that unrestricted possession would endanger the physical or emotional welfare of the child, while restricted access would not. *See In re Marriage of Collier*, 419 S.W.3d 390, 398 (Tex. App.—Amarillo 2011, pet. denied); *Walters*, 39 S.W.3d at 286.

Here, Geri is permitted to visit her children only when the Department agrees to permit visitation, or, in the absence of an agreement, only when the children's counselor recommends visitation. The effect of the trial court's possession order is such that the Department and/or the children's counselor are afforded absolute discretion over Geri's visitation with the children. This order, in essence, could have the effect of denying Geri any access to her children for an indeterminate time. As recognized by our sister court, "cases involving complete denial of access are rare and usually reversed on appeal." *Fish*, 2010 WL 5019411, at *9.[21]

---

[21]*Fish* goes on to state:

> Even in cases involving abusive, erratic, or other harmful behavior, parents are usually allowed limited visitation; those limits are generally affirmed on appeal. *See Ohendalski v. Ohendalski*, 203 S.W.3d 910, 915–16 (Tex. App.—Beaumont 2006, no pet.) (affirming order that deviated from standard possession order and prohibited father from driving with children; father committed family violence in presence of at least one child, had history of chronic alcohol abuse, drank during supervised visitations, and "terrorized one or more of the children by operating a vehicle while under the influence"); *In re L.M.M.*, No. 03-04-00452-CV, 2005 Tex. App. LEXIS 7191, at *11–20, 35–36, 2005 WL 2094758 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.) (affirming order giving mother limited, supervised visitation if she began and continued psychological treatment; mother had psychological disorders, including uncontrollable anger, caused scene and screamed at daughter in public, expressed "a lot of hate" toward daughter, hid tape recorder in son's bag and instructed son to provoke fight with father, and "caused mental and emotional damage to her children"); *Sedgwick v. Sedgwick*, No. 05-01-00711-CV, 2002 Tex. App. LEXIS 2789, at *14–16, 2002 WL 651607 (Tex. App.—Dallas Apr.22, 2002, no pet.) (not designated for publication) (affirming order giving mother limited, supervised visitation; mother was described as emotionally volatile and controlling, threatened to throw child overboard and watch her drown, repeatedly

The trial court could not make an order that denied Geri access to her children unless it decided that the children's best interests warranted such an order. *See Walters*, 39 S.W.3d at 287. This it did not do. In fact, the trial court specifically found that Geri's appointment as possessory conservator was "in the best interest of the children." There is no indication that the trial court intended to completely deny access. Given the evidence, though, it is quite reasonable for the trial court to have restricted Geri's access to the children. *See id.*

In an order appointing a parent as possessory conservator, the trial "court shall specify and expressly state in the order the times and conditions for possession of or access to the child, unless a party shows good cause why specific orders would not be in the best interest of the child." TEX. FAM. CODE ANN. § 153.006(c) (West 2014). "[T]he real problem with the trial court's order in the present case is that it is not sufficiently specific as to the times and conditions for [Geri's] possession of or access to [the children]." *Walters*, 39 S.W.3d at 288. We sustain this point of error and conclude that the trial court erred in not sufficiently specifying the terms of Geri's possession of or access to the children.

---

obstructed father's possession of child, and failed to comply with earlier visitation orders); *Enos v. Enos*, No. 14-97-00159-CV, 1998 Tex. App. LEXIS 2270, at *10–22, 1998 WL 175689 (Tex. App.—Houston [14th Dist.] Apr. 16, 1998, no pet.) (not designated for publication) (affirming order giving mother only one hour of supervised visitation per month; mother was emotionally unstable and manipulative, children were distressed by visits, counselor and psychologist testified that children's exposure to mother should be limited, and mother often failed to appear for visitations); *Hopkins v. Hopkins*, 853 S.W.2d 134, 138 (Tex. App.—Corpus Christi 1993, no writ) (affirming order giving father two hours of supervised visitation every other week; father had been convicted of drug delivery, used drugs in front of children, severely abused mother and threatened her with gun, hit older child, neglected children, denied treatment to child who suffered head injury while in father's care, kept extremely unsanitary house, and behaved erratically, including waking "from a nap to discover the oldest child's face covered with blood").

*Fish*, 2010 WL 5019411, at *9 n.8.

18

## V. Conclusion

Because the trial court's order regarding possession and access was not sufficiently specific as to the times and conditions of Geri's possession of or access to the children, we reverse the judgment of the trial court and remand for further proceedings. We affirm the trial court's order in all other respects.

Bailey C. Moseley
Justice

Date Submitted:     March 28, 2017
Date Decided:       April 28, 2017