**Opinion issued November 29, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00512-CV

———————————

## IN THE INTEREST OF C.L.J.S., A CHILD

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-02511J**

---

## MEMORANDUM OPINION

This is an appeal from a final decree entered in a suit affecting the parent–child relationship. On appeal, the child's adoptive mother contends that the trial court erred in (1) appointing the Department of Family and Protective Services as sole managing conservator of her adopted child; and (2) appointing her as possessory conservator of the child but decreeing that she have no contact or visitation with the

child. We affirm the trial court's conservatorship decision, reverse its ruling that the mother have no contact or visitation with the child, and remand this case for further proceedings consistent with our opinion.

## BACKGROUND

The Department sued, seeking to be named as the child's sole managing conservator, but it did not seek termination of the mother's or father's parental rights. The Department's suit was tried to the bench.

The mother adopted the child at the age of one. The child was 10 years old at the time of trial and was living with the adoptive mother's sister when the Department was appointed as the temporary managing conservator.

The child came into the Department's care after she alleged that someone had physically abused her and that her aunt's boyfriend had sexually abused her. The child's caseworker, Iris Darrington, testified that the Department had ruled out the alleged physical abuse. But it found the child's allegation of sexual abuse to be credible, notwithstanding the child's later recantation of the allegation.

After the Department removed the child from her aunt's home, she initially lived with her maternal grandmother. The Department later removed her from her grandmother's home. The Department then placed the child in a foster home. This placement lasted six days. The Department subsequently placed the child in a residential treatment center, which is where she resided when trial commenced.

2

According to Darrington, there was no evidence that the child had resided with her adoptive mother before the Department became her temporary managing conservator, nor any that the child's adoptive mother had raised the child. Darrington testified that the mother, her sister, and the child each confirmed that the child had lived with her aunt after her adoption.

Darrington testified about the child's mental health, which includes diagnoses of attention deficit hyperactivity disorder and regulatory disruptive mood disorder. The child also suffers from mood swings, depression, and suicidal and homicidal tendencies.

Darrington opined that it would not be appropriate to place the child in her mother's care due to the child's allegations of sexual abuse and the family's disbelief of these allegations. The Department offered to work with the family to keep the child in the home, but the family told Darrington that the child was unwelcome because other children in the home fear her.

Darrington conceded that the child's therapist believed that the mother should have visitation. Darrington testified that the therapist was of the opinion that, should visitation occur, "it should be on a regular schedule because, in the past, it has been inconsistent" and has disappointed the child's hopes.

The child's advocate, Kaitlyn Pennington, agreed that that Department should be named sole managing conservator.

Lisa McCartney, a court-appointed special investigator, testified as an expert witness. She opined that appointment of the Department as sole managing conservator was in the child's best interest. McCartney stated that she was "not real favorable about visitation," because of the reports of abuse, including "a medical finding of confirmed sexual abuse on this child during a medical examination," and because the adoptive mother told McCartney that the child had never lived with her. McCartney opined that the child required time "to try to heal therapeutically."

The mother testified about the circumstances of her adoption of the child. She explained that her sister had tried to adopt the child but was unable to do so due to a marital separation. She testified that she did not intend for the child to live with her sister on a permanent basis. She denied telling McCartney that the child had never lived with her. She conceded, however, that the child had alternated between living with her and her sister throughout the child's life. The mother testified that she saw the child on an almost daily basis after adopting her. She also stated that she was financially responsible for the child and paid for her insurance and medical care. The mother conceded, however, that her own divorce decree did not name the child as one of her children.

The mother testified that the child began exhibiting behavioral problems at the age of three and that they progressively worsened. Multiple child protective services cases were opened based on the child's allegations of abuse, but they were

closed because those allegations could not be substantiated. The mother said that since the discovery of the sexual abuse, the "family hasn't had any contact with that person" alleged to have committed the abuse.

The mother visited the child while she was in the Department's care and spoke with the child by telephone weekly. The child was "not doing well" at the treatment center. The mother said that she previously approved of the Department's involvement because she thought it could help, but it has not helped.

The child's adoptive father—the mother's ex-husband—did not attend trial. The record reveals no evidence about the father's involvement in the child's life.

The trial court found that appointment of the parents as managing conservators would not be in the child's best interest. It further found that appointment of a relative of the child or another person also would not be in the child's best interest. The trial court therefore appointed the Department as the child's sole managing conservator.

The trial court named the parents as possessory conservators. Despite their appointment as possessory conservators, the trial court ordered that both parents "shall have no contact or visitation with the child at this time" and found that this term did "not exceed the restrictions needed to protect the best interest of the child." Finally, the trial court ordered both adoptive parents to pay child support. It ordered the mother to pay $1,076 per month and the father to pay $404 per month.

5

## DISCUSSION

The mother raises two issues on appeal. First, she contends that the trial court erred in appointing the Department as the child's sole managing conservator. Second, she contends that the trial court erred in naming her a possessory conservator while denying her any contact or visitation with the child.

## I.     Standard of Review

We review conservatorship decisions for abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re J.J.G.*, 540 S.W.3d 44, 55 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (en banc). We likewise review visitation decisions for abuse of discretion. *Moreno v. Perez*, 363 S.W.3d 725, 737 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion if its decision is arbitrary and unreasonable. *J.A.J.*, 243 S.W.3d at 616; *J.J.G.*, 540 S.W.3d at 55. Thus, in reviewing a decision for abuse of discretion, we examine whether the court acted without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *J.J.G.*, 540 S.W.3d at 55. A trial court does not abuse its discretion when it bases its decision on conflicting evidence or so long as some evidence of substantive and probative character supports its decision. *J.J.G.*, 540 S.W.3d at 55.

Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds of error; instead, they are factors in deciding if the trial court abused its discretion. *J.J.G.*, 540 S.W.3d at 55. If a party challenges the sufficiency

of the evidence when the proper standard is abuse of discretion, we consider whether the trial court: (1) had sufficient information upon which to exercise its discretion, and (2) erred in its application of discretion. *See id.*; *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

In a legal-sufficiency review, we examine the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 810, 827 (Tex. 2005); *J.J.G.*, 540 S.W.3d at 55. If the evidence would enable reasonable, fair-minded people to differ in their conclusions, then the factfinder's finding must stand. *City of Keller*, 168 S.W.3d at 822; *J.J.G.*, 540 S.W.3d at 56. We cannot substitute our judgment for the factfinder's as long as the evidence lies within this zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822; *J.J.G.*, 540 S.W.3d at 56.

In a factual-sufficiency review, we examine the evidence in a neutral light and affirm so long as the evidence supporting the trial court's findings is not so weak as to be clearly wrong and manifestly unjust. *See J.J.G.*, 540 S.W.3d at 62 (citing *Cain v. Bain*, 709 S.W.3d 175, 176 (Tex. 1986) (per curiam)). The trial court as the factfinder is the sole judge of credibility of the witnesses and the weight of their testimony; accordingly, we defer to its credibility assessments. *City of Keller*, 168 S.W.3d at 819.

## II. Department's Appointment as Sole Managing Conservator

### A. Applicable law

Section 263.404 of the Family Code governs a trial court's appointment of the Department as a child's managing conservator without terminating parental rights. *J.G.G.*, 540 S.W.3d at 57. A trial court may appoint the Department as managing conservator without terminating parental rights if it finds by a preponderance of the evidence that:

(1) appointment of a parent would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and

(2) it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

TEX. FAM. CODE § 263.404(a); *J.J.G.*, 540 S.W.3d at 57, 61. In addition, the trial court must consider whether the child will reach the age of 18 in not less than three years; the child is 12 years of age or older and has expressed a strong desire against termination or has continuously expressed a strong desire against adoption; and the needs and desires of the child. TEX. FAM. CODE § 263.404(b).

Impairment of the child's physical health or emotional development must be proved by showing that specific acts or omissions of the parent demonstrate that awarding her conservatorship would result in physical or emotional harm to the child. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990); *In re R.L.*, No. 01-16-00851-CV, 2017 WL 1496955, at *14 (Tex. App.—Houston [1st Dist.] Apr.

8

21, 2017, no pet.) (mem. op.). Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior. *R.L.*, 2017 WL 1496955, at *15. Other considerations may include parental irresponsibility, mental health problems, frequent moves, bad judgment, and an unstable lifestyle. *Id.* These circumstances need not rise to a level that warrants termination of parental rights, which is governed by a higher standard of proof, to support a finding that the appointment as a conservator would impair the child's physical health or emotional development. *See J.A.J.*, 243 S.W.3d at 615–16; *J.J.G.*, 540 S.W.3d at 60–61.

## B. Analysis

The trial court heard conflicting evidence about the mother's relationship with her child. The court reasonably could have concluded from this conflicting evidence that the mother had engaged in conduct practically indistinguishable from abandonment that impaired the child's emotional development. It is undisputed that the child was residing with her aunt when the Department took the child into its care. Darrington and McCartney testified that the child had not lived with her mother, and the trial court was entitled to credit their testimony over the mother's contrary testimony. *See City of Keller*, 168 S.W.3d at 819.

Darrington also testified that the mother's contact with the child had been inconsistent since she came under the Department's care and that this negatively

9

affected the child's emotional wellbeing.  The mother disputed Darrington's account, but as factfinder the trial court once again was entitled to disbelieve the mother. *See City of Keller*, 168 S.W.3d at 819.  The trial court therefore reasonably could have considered the mother's inconsistent communication as further evidence of significant impairment.  *See R.L.*, 2017 WL 1496955, at \*17; *see also* TEX. FAM. CODE § 263.404(b)(3) (directing trial court to consider the child's needs).

Accordingly, we hold that the record contains legally and factually sufficient evidence of abandonment, which suffices to show that the appointment of the mother as a managing conservator would significantly impair the child's physical health or emotional development.  *See Danet v. Bhan*, 436 S.W.3d 793, 797 (Tex. 2014) (per curiam) (abandonment and other evidence supported finding that return of child into mother's custody would substantially impair child's physical health or emotional development); *J.G.G.*, 540 S.W.3d at 61 (father's effective abandonment of children for lengthy periods of time supported finding that placing children back into his care would significantly impair their physical health or emotional development).

The mother does not contend that appointment of a relative or another person would be in the child's best interest.  Based on the evidence before the trial court, it reasonably could have found that such an appointment would not be in the child's best interest.  The adoptive father did not attend trial and has not appealed from the

conservatorship order. The record does not indicate that he has played any role in the child's life since he and the child's adoptive mother divorced.

In sum, we hold that the trial court did not abuse its discretion in appointing the Department as the child's sole managing conservator.

## III. Denial of Parental Access to the Child or Visitation Rights

### A. Preservation of error

The Department contends that the mother did not preserve the issue of visitation for review. We disagree. Darrington testified at trial that the child's therapist believed that the adoptive mother should be able to have regular visitation. Based on this testimony, the mother's counsel argued that the trial court should allow the mother to have contact with the child. We therefore reject the Department's waiver argument and turn to the merits.

### B. Applicable law

The terms of an order limiting a parent's access to her child may not exceed those that are required to protect the child's best interest. TEX. FAM. CODE § 153.193; *Moreno*, 363 S.W.3d at 738. Complete denial of visitation is seldom appropriate. *Tran v. Nguyen*, 480 S.W.3d 119, 125 (Tex. App.—Houston [14th Dist.] 2015, no pet.). This is so because the complete denial of parental access to a child is tantamount to the termination of parental rights. *In re J.Y.*, 528 S.W.3d 679, 689 (Tex. App.—Texarkana 2017, no pet.). Accordingly, a parent is generally

11

entitled to periodic visitation, and visitation should not be denied entirely except in extreme cases of parental unfitness. *Tran*, 480 S.W.3d at 126; *In re Cassey D.*, 783 S.W.2d 592, 596–97 (Tex. App.—Houston [1st Dist.] 1990, no pet.). Extreme cases of parental unfitness essentially are limited to situations almost rising to a level that would warrant the termination of parental rights. *See J.Y.*, 528 S.W.3d at 689–90; *see, e.g.*, *Tran*, 480 S.W.3d at 126–27 (affirming denial of incarcerated father's visitation with biological daughters given that he molested stepdaughter); *Green v. Green*, 850 S.W.2d 809, 813 (Tex. App.—El Paso 1993, no writ) (affirming denial of possessory conservatorship and visitation where father threatened mother, spoke vulgarly to daughter, and was nude from waist down in daughter's presence).

## C.    Analysis

Though the trial court appointed the Department as sole managing conservator, it appointed the mother as a possessory conservator. In doing so, the trial court implicitly found that the mother's appointment to this more limited role was in the child's best interest and that the mother's access to the child would not endanger the child's physical or emotional welfare. *See* TEX. FAM. CODE § 153.191; *see also In re Walters*, 39 S.W.3d 280, 287 (Tex. App.—Texarkana 2001, no pet.) (appointment of mother as possessory conservator implied finding that any danger she posed to son could be remedied by order limiting access). Nor does the record contain evidence that appropriate restrictions or limitations on parental access, such

as supervised visitation, would be inadequate to safeguard the child. When, as here, there has not been a showing of parental unfitness so extreme as to render even limited parental contact or visitation against the child's best interest, the total and indefinite denial of parental access is improper. *See Tran*, 480 S.W.3d at 125–26; *Cassey D.*, 783 S.W.2d at 596–97.

Relying on Section 153.004(c) of the Family Code, the Department contends that the trial court properly considered the allegations of sexual abuse of the child in deciding whether to allow supervised visitation. The Department did not contend that the mother had sexually abused the child; rather, the evidence at trial was that her sister's boyfriend had done so. Thus, Section 153.004(c) is inapt with respect to the mother's request for visitation. The Department also relies on Section 153.004(e)(1), which establishes a presumption against unsupervised visitation when there is credible evidence of a history of neglect by the parent. *See* TEX. FAM. CODE § 153.004(e)(1). But this provision does not support the Department's position with respect to supervised visitation.

Lastly, the Department contends that the trial court's decree may be revisited at future permanency hearings. *See* TEX. FAM. CODE § 263.501(a) (providing for biannual hearings when the Department is named managing conservator and parental rights are not terminated). The possibility that the trial court might enter a different order at a later point in time does not, however, cure the infirmity in the evidence to

13

support the present order.  *See J.Y.*, 528 S.W.3d at 690 (treating order that "could have the effect of denying [mother] any access to her children for an indeterminate time" as one involving complete denial of access).

## CONCLUSION

We affirm the trial court's appointment of the Department as the child's sole managing conservator.  We reverse the trial court's decree that the mother have no contact or visitation with the child, and we remand the case to the trial court for further proceedings consistent with our opinion.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.