

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00146-CV

IN THE INTEREST OF K.N., K.L., K.L., AND K.L., CHILDREN

On Appeal from the 223rd District Court
Gray County, Texas
Trial Court No. 40,562, Honorable Phil N. Vanderpool, Presiding

September 19, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Mother, CN, and Father, RL, appeal the trial court's orders entered in this suit affecting the parent-child relationship. The matter involves four children. Each had the same mother, CN. One child, KN, had an "unknown" father.[1] The other three (KL1, KL2, and KL3 or the KL siblings) were fathered by RL. Upon trial, a jury found statutory grounds existed to terminate the parental relationship between him and the KL siblings. The best interests of those siblings also favored termination, according to the jury.[2] The

---

[1] The parental rights of the unknown father were terminated, as well. But, he did not appeal.

[2] The finding also encompassed the best interests of KN, though she was not the biological daughter of RL.

same is true regarding Mother and all four children, at least with regard to the existence of statutory grounds supporting termination. Despite two of those grounds implicating Mother's endangerment of each child, the jury decided that the best interests of the KL siblings did not favor termination, even though those of KN did. Confusing? Yes, but that is the framework within which we consider the separate issues of Mother and Father and, ultimately, affirm.

### *Mother's Complaint about the Sufficiency of the Evidence*

Mother posits that the Department failed to present sufficient evidence supporting the two prongs implicit in terminating parental rights. Allegedly, the Department failed to prove a requisite statutory ground and that best interests of KN favored termination. We overrule the issue.

The standards for reviewing are well-established and described most recently in *In re J.F.-G.,* 627 S.W.3d 304 (Tex. 2021). We apply them here.

*Statutory Grounds*

The Texas Family Code permits termination if the parent knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the child's physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). It also provides for termination if the parent had engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See id.* § 161.001(b)(1)(E). To endanger is to expose to loss or injury, to jeopardize. *See In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022). These were two of several grounds found by the jury.

2

Here, there is evidence that Mother's discipline of KN crossed the line into abuse in terms of lengthy wall stands or walls sits, by most accounts lasting for hours at a time, beatings with a belt, and kneeling on grains of dry rice for extended periods. Punishment of KN also included forms of food deprivation, that is, depriving KN of food given to other family members. School officials became concerned with the way KN would eat and her fear of her mother discovering that she ate breakfast at school. Other acts by Mother directed at KN included dragging the child by her hair, injuring her shoulder, and making her sleep in the dog's bed. Abusive or violent conduct by a parent can support a conclusion that a child's physical or emotional well-being was endangered. *In re McElhaney*, No. 07-04-0577-CV, 2005 Tex. App. LEXIS 236, at *1–2 (Tex. App.—Amarillo Jan. 12, 2005, no pet.) (mem. op.).

When the Department got involved with the family, Mother refused to work any services or cooperate in any meaningful way. Instead, she and Father moved the children to Louisiana to escape what they considered interference by the Department. There, the children were kept out of school to prevent their detection by the Department. *See T.D. v. Tex. Dep't of Family & Protective Servs.*, 683 S.W.3d 901, 914 (Tex. App.—Austin 2024, no pet.) (observing that failing to educate children is endangering conduct). Evidence further illustrates that the children were in need of medical or dental care but were denied it. *See In re J.H.*, No. 07-21-00059-CV, 2021 Tex. App. LEXIS 5209, at *9 n.4 (Tex. App.—Amarillo June 30, 2021, pet. denied) (mem. op.) ("[M]edical neglect endangers the children.").

We add that Mother also twice confronted the school's staff member at the grocery store resulting in criminal charges being brought against her. Criminal conduct is relevant

3

to the endangerment analysis under subsections (D) and (E) as it subjects children to a life of uncertainty. *See In re B.J.F.*, No. 01-23-00522-CV, 2024 Tex. App. LEXIS 192, at *78 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024, pet. denied) (mem. op.).

We conclude that, based on the record before us, the evidence was legally and factually sufficient to enable a factfinder to form a firm conviction and belief that Mother endangered the physical well-being of KN. Because one predicate ground for termination is sufficient to support the decision, we need not address Mother's issues challenging the sufficiency of the evidence to support the trial court's findings under subsections (N) and (O). *See In re A.M.A.*, No. 07-16-00224-CV, 2016 Tex. App. LEXIS 10565, at *9–10 (Tex. App.—Amarillo Sept. 27, 2016, pet. denied) (mem. op.) (citing *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003)).

*Best Interest of the Child*

In addition to finding that a predicate ground supports termination, the trial court must also find by clear and convincing evidence that termination of the parent-child relationship favors the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). When assessing the evidence regarding the trial court's best-interest determination, we consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).[3] Although those factors are not exhaustive, they indicate a number of considerations which either have been or would appear to be pertinent. *Holley*, 544 S.W.2d at 372. Additionally,

---

[3] The *Holley* factors are as follows: 1) the desires of the child; 2) the emotional and physical needs of the child now and in the future; 3) the emotional and physical danger to the child now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist these individuals to promote the best interest of the child; 6) the plans for the child by these individuals or by the agency seeking custody; 7) the stability of the home or proposed placement; 8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

evidence establishing the statutory grounds for termination may also be considered in the assessment of best interests. *See In re E.P.*, No. 07-23-00449-CV, 2024 Tex. App. LEXIS 3671, at *5–6 (Tex. App.—Amarillo May 29, 2024, pet. denied) (mem. op.). Comparing the evidence described earlier with *Holley* and other relevant indicia leads us to conclude that the jury's best interest finding had the support of both legally and factually sufficient evidence.

KN clearly expressed her fear of having to return to her mother's care. So too were the children denied medical or dental care. The record indicates that the children's current social, educational, medical, and emotional needs are being attended to in their current home. Furthermore, the abuse and danger posed by Mother to KN has been eliminated through the placement while the younger children are insulated from witnessing it. Though there is evidence that Mother undertook counseling outside the Department's family services plan, her failure to complete other services also tips against her in the balance. *See In re D.C.*, 128 S.W.3d 707, 717 (Tex. App.—Fort Worth 2004, no pet.) (concluding that a parent's refusal or inability to provide a stable home, remain gainfully employed, or comply with a court-ordered service plan supports a finding that termination is in the child's best interest). And, again, both Mother and Father ignored the children's educational needs by refusing to enroll them in school after moving to Louisiana. Mother's acts and omissions that served to endanger KN's physical and emotional well-being have been detailed above and need not be reiterated. They too support the decision that termination favors KN's interests.

The maternal grandparents have provided a stable and loving environment for the children. Family friends, with whom the children have an established relationship, also

5

hope to care of the children as a unit to relieve the grandparents of the demands of raising four children. So too is the extended family committed to the children staying together.

In sum, the foregoing is legally and factually sufficient evidence to support both the finding that termination of the parent-child relationship between Mother and KN is in the latter's best interests and a statutory ground warranting termination. So, the purported error complained of by Mother is non-existent.

### Mother's Issue on Conservatorship

As said earlier, the jury found that it was not in the best interests of the KL siblings to terminate Mother's parental rights. Because they remained intact, who to serve as their managing conservator remained an open question. Ultimately, the trial court designated the Department to so serve. Mother argues that the selection constituted an example of abused discretion. We overrule the issue.

Generally, to appoint one other than a parent as managing conservator, a preponderance of the evidence must illustrate that retaining the parent in that status would not be in the child's best interests because it would significantly impair the child's physical health or emotional development. *See* TEX. FAM. CODE ANN. §§ 105.005, 153.131(a), 263.404; *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007). Evidence must support the logical inference that some specific, identifiable behavior or conduct of the parent, demonstrated by specific acts or omissions, will probably cause serious harm. *R.H. v. D.A.*, No. 03-16-00442-CV, 2017 Tex. App. LEXIS 1743, at *10–11 (Tex. App.—Austin Mar. 2, 2017, pet. dism'd) (mem. op.). If such is found and the trial court appoints another, the determination is reviewed for abused discretion. *See In re J.A.J.*, 243 S.W.3d at 616. Within that setting, the legal insufficiency and factual insufficiency of the evidence

6

underlying the decision are merely relevant factors in the assessment, not independent grounds of error. *See In re A.M.*, 604 S.W.3d 192, 197 (Tex. App.—Amarillo 2020, pet. denied).

Acts or omissions that may significantly impair a child's physical health or emotional development include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, parental irresponsibility, and bad judgment. *See In re M.L.*, No. 02-15-00258-CV, 2016 Tex. App. LEXIS 7189, at *11 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.); *see also In re J.Y.*, 528 S.W.3d 679, 687 (Tex. App.—Texarkana 2017, no pet.) (observing evidence of the mother's "volatile emotions and erratic behavior" as relevant to the conservatorship determination); *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.) (noting that a "parent's treatment of other children may be relevant" when determining conservatorship). Courts also examine other considerations such as parental irresponsibility, a history of mental disorders and suicidal thoughts, frequent moves, bad judgment, child abandonment, and an unstable, disorganized, and chaotic lifestyle that has put and will continue to put the child at risk. *In re S.T.*, 508 S.W.3d at 492.

Here, the aforementioned abuse of KN and endangerment to which all the children were exposed, the medical or dental neglect suffered by the children, the educational neglect they experienced, Mother's refusal to participate in services to improve her parenting skills, the parental decision to move the family to Louisiana to evade the Department's supervision over the children, Mother's anger issues exemplified by the physical punishment inflicted on KN, and her screaming threats publicly in a Walmart against someone who reported an instance of abuse to the Department constitute

7

evidence from which the jury (and court) could determine that appointing Mother as managing conservator would not serve the best interests of the children since it would significantly impair the children's physical health or emotional development.[4] *See In re E.M.T.*, No. 04-18-00805-CV, 2019 Tex. App. LEXIS 2358, at *7 (Tex. App.—San Antonio Mar. 27, 2019, no pet.) (mem. op.) (noting evidence of the parent's anger and use of physical discipline as factors indicating the appointment of the parent as managing conservator would significantly impair the child's physical health and emotional development).

### Father's Sufficiency Contentions

Father also challenges the sufficiency of the evidence to support termination of his parental rights to the KL siblings under subsections (D) and (E). We overrule the issue.

#### Statutory Grounds

We reiterate the evidence noted above and supporting the termination of Mother's parental rights to KN. Though Father was not directly involved in the abuse of KN, he was present when it occurred and knew of it. In fact, he acknowledged that Mother's behavior was aberrant and expressed that he had considered leaving with all the children, but his plans "never panned out." That is evidence of his knowingly placing the children with a person who engaged in conduct which endangered the children's physical or emotional well-being. See TEX. FAM. CODE ANN. § 161.001(b)(1)(E). He had a responsibility to the children to provide them a safe environment, free from abusive

---

[4] Those threats resulted in criminal charges being filed against Mother. Additionally, Mother's own family expressed concerns regarding Mother's anger issues, explaining that it was difficult to maintain a relationship with her due to her anger and unpredictability. Whenever the family confronted Mother about her mistreatment of KN, she would scream and leave. Father also expressed some apprehension about Mother's anger, having stated to Mother's family that "at least it was [KN] and not him getting in trouble."

8

behavior. *See In re C.N.L.*, No. 13-23-00591-CV, 2024 Tex. App. LEXIS 2860, at *11 (Tex. App.—Corpus Christi Apr. 25, 2024, no pet.) (mem. op.) (a child's physical or emotional well-being is endangered when a parent fails to remove them from a home in which abusive or violent conduct is occurring). And, in that responsibility, he failed.

Additionally, the Department curtailed his visitations with the children due to a positive drug test for amphetamine. Though claiming it to be the result of ingesting prescribed medication, he refused to sign a medical release that would permit the Department to confirm his excuse. And, evidence of his arrest in Louisiana for aggravated flight from an officer, reckless operation, ***and possession of methamphetamine*** should not be ignored. *See In re McElhaney*, 2005 Tex. App. LEXIS 236, at *1–2; *see also In re B.J.F.*, 2024 Tex. App. LEXIS 192, at *78 ("A parent's criminal conduct, convictions, and imprisonment also endangers [sic] a child's physical and emotional well-being because it subjects the child to a life of uncertainty and instability."). That he was found with the illegal contraband of methamphetamine when arrested tends to rebut his suggestion that the earlier, positive drug test for amphetamine was the result of ingesting prescribed medication.

We further note his 1) failure to participate in any services offered by the Department, 2) involvement in thwarting the Department's effort to care for the children by moving them to Louisiana, and 3) involvement in restricting the children from attending school to further evade the Department. So too did he neglect the children's medical and dental needs.

Together, the foregoing constituted evidence permitting a rational factfinder to form a firm conviction and belief that termination was warranted under subsections (D) and (E). Father's contention otherwise is simply wrong.

*Best Interests of the Children*

We reiterate the *Holley* factors mentioned earlier. Comparing them to the evidence of record, we too conclude that the jury had ample basis to clearly and convincingly find that termination of the parental relationship served the best interests of the KL siblings. That evidence included 1) Father's endangerment of the children's physical and emotional well-being, 2) his failure to meet their medical, dental, and educational needs, 3) his continued criminal behavior, 4) his seeming effort to defend or excuse the actions of Mother, 5) his participation in the removal of the children from the Department's jurisdiction, 6) his refusal to perform services, and 7) the beneficial current placement of the children.

### Admission of Police Report

Father also complains about the admission of a Louisiana police report involving his pursuit and eventual arrest in that state. Yet, it was not the sole evidence of that escapade. The officer who authored the report testified, without objection, about the attempted traffic stop of Father, the ensuing high-speed pursuit, his apprehension and arrest, and the discovery of approximately four grams of methamphetamine in Father's pocket. Purported error concerning the admission of evidence is harmless when other like evidence is admitted without objection. *See In re L.T.*, No. 07-09-0280-CV, 2010 Tex. App. LEXIS 2250, at *10 (Tex. App.—Amarillo Mar. 30, 2010, no pet.) (mem. op.). That

10

having occurred here, we overrule Father's complaint about admitting the police report itself.

### Father as Managing Conservator

Father seems to contend through his fifth issue that the trial court erred in failing to appoint him managing conservator. To the extent he does, we overrule the issue based upon 1) the very evidence supporting the termination of his parental rights and 2) the evidence supporting the appointment in lieu of Mother. Our incorporating that evidence here leads us to conclude that the trial court did not abuse its discretion in appointing the Department managing conservator of the children. *See In re C.N.S.*, No. 14-14-00301-CV, 2014 Tex. App. LEXIS 8612, at *33 (Tex. App.—Houston [14th Dist.] Aug. 7, 2014, no pet.) (mem. op.) (holding that the very evidence supporting termination insulated the decision to appoint the Department as managing conservator from an allegation of abused discretion).

### Mother's and Father's Common Issue: Exclusion of Administrative Review Report

Finally, both Father and Mother argue that the trial court erred in excluding from evidence a report about an administrative review and investigative findings. The report allegedly illustrated that an earlier finding by the Department about an instance of emotional abuse between Mother and KN had been reversed. The trial court excluded the evidence, conceding that it may bear some relevance but concluding its probative value was substantially outweighed by a danger of unfair prejudice and confusing the issues. *See* TEX. R. EVID. 403. Other reasons were also revealed by the trial court for excluding the report. They included hearsay and the lack of evidence qualifying the investigator issuing the report as an expert. In reviewing the trial court's decision, we

11

again apply the standard of abused discretion. *In re D.D.*, No. 02-17-00368-CV, 2018 Tex. App. LEXIS 2440, at *34 (Tex. App.—Fort Worth Apr. 5, 2018, no pet.) (mem. op.) (per curiam) (so requiring). And, upon doing so, we overrule the issue.

The administrative report in question indicated that an investigator ruled out evidence of emotional abuse. Apparently, "emotional abuse" for the Department's administrative purposes, consisted of establishing that the parent "caused a mental or emotional injury to her daughter that resulted in an observable and material impairment in her growth." Explicit within that test is proof of actual injury, that is, "observable" "mental or emotional injury" resulting in material impairment. Yet, statute permits termination for "endanger[ing] the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Though endangering requires more than a threat of metaphysical injury or the possible ill effects of a questionable family environment, the child need not suffer actual injury to satisfy the parameters of either (D) or (E). *In re J.J.*, No. 07-13-00117-CV, 2013 Tex. App. LEXIS 11194, at *10–11 (Tex. App.—Amarillo Aug. 29, 2013, no pet.) (mem. op.). So, the test utilized when determining whether to terminate a parental relationship under the Family Code significantly differs from that used by the Department in conducting its administrative affairs. The differing tests (i.e., the need for trauma in the administrative setting versus the lack of need in the judicial setting) therefore minimizes the relevance of the report in a termination trial. Utilizing it here to bar termination under either (D) or (E) is like proving a piece of fruit is not an apple by showing it is not an orange. One could reasonably view such a comparison as likely to interject confusion; this is especially so when, like here, the administrative finding was based not

12

on the lack of questionable conduct but rather the lack of injury from that conduct.[5]  Given these circumstances, we cannot say that a trial court's exclusion of the report under Rule 403 because its nominal relevance was substantially outweighed by the risk of confusing the issues would be unreasonable or an abuse of discretion.

Before closing, though, we note another matter.  Interestingly, the same report continued with:  "[i]t should be noted that by no means does changing the disposition to Rule Out negate the fact that **risk was identified** by the investigator and services were recommended for this family."  (Emphasis added).  Logically, the existence of a "risk" furthers the notion of endangerment.  That is, to "endanger" means to expose to loss or injury or to jeopardize.  *Id.* at *10-11.  Exposing one to a risk of emotional harm nudges the conduct closer towards the line of endangerment contemplated under (D) and (E). So, admitting the report could well have fostered the Department's position, which, in turn, means excluding it from evidence minimized any harm to Mother or Father.

Having overruled the issues presented by both Mother and Father, we affirm the trial court's orders.


                                                    Brian Quinn
                                                    Chief Justice

---

[5] The reported stated:  "There is insufficient evidence that [KN] experienced significant or serious negative effects on her intellectual or psychological development or functioning."